NELSON P. COHEN
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Rm. 253
Anchorage, AK 99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-2344
richard.pomeroy@usdoj.gov

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ROSA GAONA,<br><br>          Plaintiff,<br><br>v.<br><br>JOHN E. POTTER,<br><br>          Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:04-cv-00118-JKS<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |

Defendant, John Potter, through counsel, moves for summary judgment pursuant to Fed. R. Civ. P. 56. This motion is supported by the following memorandum of law.

## I.  INTRODUCTION

Plaintiff, Rosa Gaona ("Gaona"), has sued John Potter in his official capacity as Postmaster General of the United States Post Service ("USPS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1964), and the Rehabilitation Act of 1973, 29

U.S.C. §§ 791 *et seq.* (1973), for alleged disability discrimination, reprisal for filing an EEOC complaint in 1991, hostile work environment, race discrimination, age discrimination, and gender discrimination.  Docket 10 at 4-10.  Ms. Gaona has made a wide variety of allegations, some for which she has not exhausted administrative remedies and some for which she has not met her prima facie or ultimate burden of proof.  Despite the variety of allegations leveled against the USPS, she is not entitled to relief on any of her claims.

## II.  FACTUAL BACKGROUND

Ms. Gaona worked for the USPS in Juneau, Alaska, from 1986 to 2005.  From 1991 to 2004, she filed 14 EEO complaints.[1]  Exhibit A.  This lawsuit centers around three EEO complaints that were consolidated and heard on September 9, 2002, before Administrative Law Judge James Carroll.  The consolidated complaints included nine specific events that Ms. Gaona alleges were discriminatory.  The three complaints are described below.

1.     EEOC Case No. 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X (Agency Case No. 4E-995-007-98):

Gaona filed this formal EEO complaint on November 28, 1997 alleging she was harassed on the basis of age, retaliation and handicap when management disallowed her return to work documentation on September 2, 1997.  She was not permitted to return to work until September 9, 1997.  Gaona alleged James Donaghey, then Postmaster, and Gethsemane Secada, Supervisor as the alleged discriminating officials.  She alleges that Elmelo Punongbayan and Ed Thorne were comparative employees.

---

[1]  The first complaint that Ms. Gaona filed, on December 1, 1991, was resolved in 1992 and she prevailed.

Gaona v. Potter
Case No. 3:04-cv-00118-JKS          2

On September 2, 1997, Gaona faxed a doctor's statement to her Supervisor, Saceda, which did not address the details regarding issues from her prior medical documentation and did not explain Gaona's limitations.  Gaona was off on September 3, 1997 and called in sick on September 4 and 5.  During her call on September 5, she informed Saceda that she would be into work on September 6.  At that point, Secada informed Gaona that her medical documentation did not address the issues raised in her previous medical documentation and that she needed to provide more specific documentation.  After Saceda went home on September 5, another fax was received in the office regarding Gaona's medical limitations.  These limitations were more restrictive than her past limitations and Secada held a light duty meeting on September 8, 1997.  Gaona could have worked on September 8, but declined due to a doctor's appointment.  She returned to work on September 9, 1997.

Mr. Punongbayan was the only other employee who had been released to work on a light duty restriction.  He provided the necessary medical documentation and called in prior to his return to work so that management could meet to discuss light duty prior to his return to work.  The light duty meeting could not be held until September 8, 1997 in Gaona's case because the Postmaster had to be present in such a meeting.

2.     EEOC Case No. 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X (Agency Case No. 4E-995-0025-98):

Gaona filed a formal EEO complaint on February 13, 1998 alleging discrimination based on gender, age, retaliation and handicap when she was denied advanced sick leave on November 22, 1997 and when she was placed on restricted sick leave on November 24, 1997.  She listed Jim Donaghey, then Postmaster, as the alleged discriminating official.  Gaona listed the following as comparative employees: Nancy Bennett, Wanda Temple, Ed Thorne, Kevin King.

Donaghey denied Gaona's request for advanced sick leave because she did not provide documentation to support her need for the leave and because he was uncertain she would be able to work regularly and long enough to pay it back. Donaghey indicates in his EEO affidavit that he authorized advanced sick leave to the following: Wanda Temple, Steve Staveland, Marites DeLaPaz, and Susan Johnson.

Sandra Hicks, Manager of Customer Services, placed Gaona on restricted sick leave due to her attendance which showed 71 days of sick leave or Leave Without Pay ("LWOP") in lieu of sick leave. The restricted sick leave status was to be re-evaluated on March 1, 1998.

3.       EEOC Case No. 330-Al-8110X (Agency File No. 4E-995-0008-00):

Gaona filed this formal EEO complaint on February 25, 2000 alleging discrimination based on gender, race, age, retaliation and disability. She originally alleged nine incidents of discrimination. The Agency accepted five issues for investigation (issues 5 - 9). On July 31, 2000, the Agency issued Plaintiff a second notice of issues to be investigated including issues 10 - 12. A summary of the issues is below:

Issue #5: Plaintiff alleges that she was not allowed to work her assigned duties on December 10, 1999 and instead delivered parcels, Express Mail and collections. Manager Ron Aherns indicated that Plaintiff took annual leave on December 6, 1999 and volunteered to work on December 10, 1999 instead. Because a T-6 employee was already scheduled to work on R+3 that day and could not be bumped pursuant to the bargaining unit agreement, Plaintiff had to be scheduled for auxiliary assistance.

Issue #6: Plaintiff alleges she was harassed regarding mail delivery and bringing mail back into the office on December 15, 1999.

Issue #7:  Plaintiff complained regarding the movement of the supervisor's desk on the workroom floor being moved closer to her case.  Manager Ron Aherns indicated decision was made to relocate the supervisor's desk from an office to the workroom floor.  In order to make the change, several carrier cases had to be relocated.  The supervisor's desk was required to be put next to a pillar for electrical and phone access. The desk was actually closer to other carriers than to Gaona.

Issue #8: Plaintiff was charged with being absent without leave when she called in due to an emergency on January 10, 2000. Manager Ron Aherns indicated in his affidavit that Gaona called in to report her absence because something was wrong with her cat.  When he arrived at work and received the message about Gaona's absence and cat, he called Gaona at home to tell her to report to work and that her cat's problem did not necessitate emergency leave.

Issue #9: Plaintiff was issued a Notice of Suspension on January 29, 2000 and subsequently suspended from March 4 - March 11, 2000.  Plaintiff was issued a suspension for unacceptable work performance for her involvement in a preventable vehicular accident when she failed to yield in a left turn.

Issue #10:  On February 26, 2000, a supervisor confronted her with taking advantage of the situation.  I could not find any statements in the investigative file of supervisors understanding what this allegation was about.

Issue #11:  On February 27, 2000, Gaona was issued a Letter of Warning ("LoW").  Manager Sandra Hicks indicated that the LoW was issued in September, 1999 for failure to follow instructions for reporting an on-the-job injury.  While it was issued by Manager Ruth Vincent, she was not in at the time it was given to Plaintiff and Hicks signed it.

Issue #12:  On June 8, 2000, Gaona claims that she was not given reasonable accommodation for her disability.  No one knows the significance of June 8, 2000.  Plaintiff left work on June 12, 2000 and reported that she injured herself at work, but she refused to inform the supervisor about her injury until she had seen her doctor.  She later submitted a CA-I on June 23 stating that her date of injury was June 10, 2000.  Gaona was always provided work within her restrictions.

**EEO Hearing**

These three EEO complaints were consolidated and went to a hearing on September 9, 2002 before Administrative Law Judge James Carroll.  The hearing consolidated three discrimination complaints which included nine specific allegations filed by Gaona.  Gaona alleged that the Agency discriminated against her on the basis of race (Hispanic and Native); sex (female); age (DOB 2/8/54); disability (myofacial pain syndrome); and reprisal for protected EEO activity when:

1.     On September 2, 1997, the Agency determined her return to work ("RTW") documentation from her health care provider unacceptable;

2.     On November 22, 1997 the Agency denied her request for advanced sick leave;

3.     On November 24, 1997, the Agency put her on restricted sick leave;

4.     On September 14, 1999 she alleged that a coworker verbally accosted her;

5.     On December 10, 1999 she was allegedly not allowed to perform her assigned duties and was given other duties;

6.     On December 15, 1999, she was allegedly harassed by a supervisor with regard to her mail delivery;

7.      The supervisor's desk was moved in 1998 to an area closer to her;

8.      On January 10, 2000, she was charged with AWOL after calling in due to an

emergency; and

9.      On January 29, 2000, Gaona received a seven day suspension.

On September 24, 2002, Judge Carroll issued a decision in favor of the USPS, finding

that the Agency did not discriminate on the basis of race, gender, age or retaliation and that

Gaona had not met her burden of proof for qualifying as a disabled individual under the

Rehabilitation Act.

The Agency issued the Notice of Final Action ("NAF") on October 8, 2002 adopting the

administrative judge's findings.  Ms. Gaona appealed the NAF on October 8, 2002, to the

EEOC's OFO.  The USPS responded on December 6, 2002.  The OFO issued its decision on

February 27, 2004, finding in favor of the USPS and affirming the findings of the administrative

court.  Exhibit B at 3.

On June 1, 2004, Ms. Gaona filed a complaint in the United States District Court for the

District of Alaska.  Ms. Gaona filed a second amended complaint on September 15, 2004.  In her

second amended complaint, Ms. Gaona lists six counts:  disability discrimination, reprisal for

protected EEOC complaint, hostile work environment, race discrimination, age discrimination,

and sex discrimination.  Docket 10.

Ms. Gaona had two other complaints pending before the EEOC when she filed her

complaint in 2004.  She also filed another administrative complaint in 2005.  The EEOC issued a

decision affirming the agency's dismissal on the 2003 and 2004 complaints on September 13,

2005.  Exhibit C.  The EEOC affirmed the USPS's dismissal of Gaona's 2005 complaint, where

she alleged that on May 10, 2005, a former supervisor, Ms. Saceda, spoke harshly to her, in

violation of a union settlement, on March 17, 2006.  Exhibit D.  Gaona had 90 days after the

issuance of these decisions to file an action in district court on this claim or to amend her

complaint to add these additional claims.  No new complaint or amended complaint were filed.


## III.  DISCUSSION

### A.  <u>STANDARDS FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate when there 'is no genuine issue as to any material

fact" and "the moving party is entitled to a judgment as a matter of law,"  Fed. R. Civ. P. 56(c);

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The utility of summary judgment in federal

courts has been increased dramatically by the Supreme Court's clarification of the burden of the

parties under Fed. R. Civ. P. 56.

> First, the courts have made it clear that if a non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine disputable fact with respect to the existence of that element, then summary judgment is appropriate.  . . . Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Finally, if the factual context makes the non-moving parties claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. . . .  No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.

<u>Cal. Arch. Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir.

1987) (citations omitted).

In the federal system, summary judgment is not a "disfavored procedural shortcut."

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548, 2555 (1986).  This court is required to

enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 2552-2553. Summary judgment is not defeated by any factual dispute; the issue must be genuine and material. Bukoskey v. Shuham, 666 F. Supp. 181, 184-85 (D. Alaska 1987).

In the present case, there are no genuine issues of material fact that Gaona has not met her burden of proof in establishing that she has been a victim of discrimination. At issue are legal questions well suited to summary judgment.

### B.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Ms. Gaona's complaint goes beyond the scope of the nine specific allegations brought before the EEOC for which she has exhausted her administrative remedies. These allegations, occurring after June, 2000, are not properly before this Court and should be dismissed.

Gaona has administratively exhausted additional complaints during the pendency of this case, but has not moved to amend her complaint to include these claims and any related EEOC investigation, as was anticipated by the parties. See Docket 23. Her failure to amend, or to file a separate suit, waives her right to present them to this court.

A federal employee, under Title VII, is required to exhaust her administrative remedies as a precondition to filing suit. Brown v. GSA, 425 U.S. 820, 832 (1976); Vinieratos v. United States, 939 F.2d 762, 768 (9th Cir. 1991). Federal court subject matter jurisdiction may be extended to discrimination allegations not included in a plaintiff's EEOC charge if the allegations "fell within the scope of the EEOC's actual investigation or an EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination." Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quoting EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994)).  The investigation conducted by the EEOC has been described above and did not include events occurring after June, 2000.

The exception to the administrative remedy exhaustion requirement is for claims of age discrimination.  A federal employee is not required to exhaust her administrative remedies with regard to age discrimination before filing a civil suit.  Bak v. Runyon, 52 F.3d 241, 244 (9th Cir. 1995).  However, there is a requirement that a claimant give notice to the EEOC of her intent to sue.  There is no record of Ms. Gaona's notification of intent to sue to the EEOC in accordance with 29 C.F.R. 1614.407.

Gaona's various, miscellaneous allegations of events that were not the subject of the EEOC investigation, for which she exhausted her administrative remedies, and for which she received a right to sue letter, should be dismissed.


### C.     NO PRIMA FACIE CASE OF DISCRIMINATION

Ms. Gaona has not met her burden of establishing a prima facie case of discrimination for any of the nine incidents for which she exhausted administrative remedies.  She has alleged  six categories of discrimination, some of which require different legal analysis.  Gaona's failures in establishing a prima facie case fall into a couple different groups.  First, she was not disabled, which is a requirement for bringing a claim for disability discrimination.  Second, she did not suffer any adverse employment action as a result of four of the nine incidents, part of her prima facie burden for bringing a Title VII claim.  Third, the request for additional medical

information, the denial of Gaona's request for advanced sick leave, and her sick leave restriction

were not retaliation because of her past EEO activity.  Fourth, the single incident of a co-worker

calling her a troublemaker did not create a hostile workplace.  And finally, her vague,

generalized allegations of discrimination for any number of reasons do not match the claims

which are properly before this court.

      Each is examined in greater detail below.

          1.     <u>Disability Discrimination</u>

      Ms. Gaona claims that she was discriminated against because of a disability.[2]  She

claimed that she hurt her back when she fell in 1995, leaving her with myofacial pain.[3]  Section

501 of the Rehabilitation Act of 1973 (29 U.S.C. § 791) is the exclusive remedy for handicap

discrimination claims by federal employees.  See, <u>Johnston v. Horne</u>, 875 F.2d 1415, 1420 (9th

Cir. 1989).  To establish a prima facie case of disability discrimination, a plaintiff must show

that (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the

essential functions of the job either with or without reasonable accommodation, and (3) she

---

[2]  Gaona's Second Amended Complaint states that she was "injured walked to work Oct. '95 (slip-fall) filed work comp claim, claim denied.  I appealed denial of work comp claim - Docket # 96-0885 / oral hearing / Office of Workers Comp did not allow my hearing / it was dropped never happened.  12-02-95 filed USPS EEO / managers harassing my medical care facility - demanding my medical records.  USPS continued to oppose Doctors requests for light duty work and accommodations [sic], which were available at he 4 post offices in Juneau.  USPS allowed jr. carriers to me to do those light duty assignments and kept me off work Jan 1996 - May 2004. File: other males and females given accommodations [sic] such as Jr carriers John Costello, Bob Ebreo, Elmelo Punongbayan, and Renae Davis are named herein were never harassed, not subjected to hostile work environment, or kept off work.  Oct 95 - Sept 2004."  Complaint at 4-5.

[3]  In general, myofacial pain syndrome involves rheumatic disorders characterized by aching pain, stiffness and tenderness of muscles.  <u>Williston v. Norwood Promotional Products, Inc.</u>, 2005 WL 1877136, *1 (C.D.Cal. 2005).

suffered from an adverse employment action because of her disability. See Kaplan v. City of North Las Vegas, 323 F.3d 1226, 1229 (9th Cir. 2003).

The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d); see also 29 C.F.R. § 1614.203(b); McLean v. Runyon, 222 F.3d 1150, 1153 (9th Cir.2000). To qualify as having a disability within the language of the ADA, a plaintiff must prove that she:

    - has a physical or mental impairment that substantially limits a major life activity; or

    - has a record of such an impairment; or

    - is regarded or perceived as having such an impairment.

42 U.S.C. § 12102(2) (ADA definition of disability); 29 U.S.C. § 705(9)(B) (Rehabilitation Act's definition of disability); 29 C.F.R. § 1630.2[4].

---

[4] (h) Physical or mental impairment means:
(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.
(i) Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
(j) Substantially limits
    (1) The term substantially limits means:
        (i) Unable to perform a major life activity that the average person in the general population can perform; or
        (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
29 C.F.R. s 1630.2

Under 42 U.S.C. § 12102(2)(A), a person is disabled if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." To qualify as a disability, a limitation "must be severe or, in other words, substantial when compared to the ability of 'the average person in the general population.'" McAlindin v. County of San Diego, 192 F.3d 1226, 1235 (9th Cir.1999), amended by 201 F.3d 1211 (2000)(quoting 29 C.F.R. § 1630.2(j)(1)(i)). A court must consider the nature and severity of the impairment, its duration, and its long-term impact. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002); 29 C.F.R. § 1630.2(j)(2) (2002). A medical diagnosis of impairment is not enough. Instead, a plaintiff must show "that the extent of the limitation [caused by her impairment] in terms of [her] own experience ... is substantial." Toyota Motor, 122 S.Ct. at 691-92 (quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)). The existence of a disability is to be determined on a case-by-case basis. Albertson's, 527 U.S. 555, 566 (1999).

Gaona's limitations were not severe or substantial. She described the limitations due to her myofascial pain syndrome as being a 30 pound lifting restriction[5], and limits on her ability to lift, twist, and turn.[6] She described this situation as lasting until 2004.[7] But for these limits, Gaona claims to be able to have worked.[8]

Gaona's inability to lift over 30 pounds or limitations of her ability to twist and turn are not a "substantial limitation" or a limitation on a "major life activity". Her back pain was of the

---

[5] Exhibit E, Gaona deposition at 59.

[6] Id. at 65.

[7] Id. at 65-66.

[8] Id. at 67.

variety that people routinely function normally.  Indeed, she states that she was able to work if someone else would lift packages weighing over 30 pounds.  She was not disabled within the meaning of the Rehabilitation Act and her cause of action should be dismissed.

2.    No Negative Employment Action

Four of Gaona's claims can be eliminated from consideration because, even if all her allegations are taken as being true, she did not suffer an adverse employment action, an element of the  prima facie case she must prove.  These four, benign claims are:

- On September 14, 1999 she alleged that a coworker verbally accosted her;

- On December 10, 1999 she was allegedly not allowed to perform her assigned duties and was given other duties;

- On December 15, 1999, she was allegedly harassed by a supervisor with regard to her mail delivery;

- The supervisor's desk was moved in 1998 to an area closer to her.

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1459 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986).

To state a prima facie case of disparate treatment, a plaintiff must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably.  Sischo-Nownejad v. Merced

Cmty. Coll. Dist., 934 F.2d 1104, 1109 n. 7 (9th Cir. 1991); see also McDonnell Douglas Corp.
v. Green, 411 U.S. 792, 802 (1973).[9]  Once the plaintiff establishes a prima facie case, the
burden then shifts to the defendant to articulate nondiscriminatory reasons for the allegedly
discriminatory conduct.   Sischo- Nownejad, 934 F.2d at 1109.  The employer's articulation of a
facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the
employer's reason was a pretext for discrimination.  Id.

        Gaona cannot establish a prima facie case for four claims  because she did not suffer any
adverse employment action as a result.  The Ninth Circuit has defined "adverse employment
action" broadly to mean any employment decision "reasonably likely to deter employees from
engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).
Adverse employment actions take many forms.  See, e.g., Passantino v. Johnson & Johnson
Consumer Products, Inc., 212 F. 3d 493, 500-01 (9th Cir. 2000)(low rating on job performance
review, decreased job responsibilities, and failure to receive promotions); Hashimoto v. Dalton,
118 F. 3d 671, 675 (9th Cir. 1997)(negative job reference), cert. denied, 523 U.S. 1122 (1998);
Miller v. Fairchild Ind., Inc., 885 F. 2d 498, 503 (9th Cir. 1989)(layoff), cert. denied, 494 U.S.
1056 (1990).

        Other conduct, however, may not constitute adverse employment action. See, e.g.,
Brooks v. City of San Mateo, 229 F. 3d 917, 922 (9th Cir. 2000) (ostracism by co-workers);
McAlindin v. County of San Diego, 192 F.3d 1226, 1238-39 (9th Cir.1999) (refusing to hold a
job open), amended by 201 F. 3d 1211, cert. denied, 530 U.S. 1243 (2000); Nunez v. City of Los

_____

[9]  To establish a prima facie case of discriminatory retaliation also requires that plaintiff must
show that she was subjected to an adverse employment action.  Jurado v. Eleven-Fifty Corp., 813
F.2d 1406, 1411 (9th Cir.1987).

Angeles , 147 F. 3d 867, 875 (9th Cir. 1998) ("badmouthing" employee); Nidus v. Schindler

Elevator Corp. , 113 F. 3d 912, 919 (9th Cir. 1996) (transfer where salary unaffected).

In defining an adverse employment action, the Supreme Court stated:

> A tangible employment action in most cases inflicts direct economic harm.
> As a general proposition, only a supervisor, or other person acting with the
> authority of the company, can cause this sort of injury.  A co-worker can break a
> co-worker's arm as easily as a supervisor, and anyone who has regular contact
> with an employee can inflict psychological injuries by his or her offensive
> conduct.  See Gary, supra, at 1397;  Henson, 682 F.2d, at 910; Barnes v. Castle,
> 561 F.2d 983, 996 (C.A.D.C.1977) (MacKinnon, J., concurring).  But one co-
> worker (absent some elaborate scheme) cannot dock another's pay, nor can one
> co-worker demote another.  Tangible employment actions fall within the special
> province of the supervisor.  The supervisor has been empowered by the company
> as a distinct class of agent to make economic decisions affecting other employees
> under his or her control.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2268 (1998)(noting, in a

sexual harassment case, that "a tangible employment action constitutes a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits.").

Gaona did not experience any act, such as a demotion or negative job reference, that

directly affected her work in any of the four events.  On September 14, 1999 she alleged that a

coworker verbally accosted her.  She was upset, but does not allege that she suffered any adverse

employment action.  On December 10, 1999, Gaona was allegedly not allowed to perform her

assigned duties and was given other duties, but she does not allege that she suffered any

consequences.  She was merely given other work to do.  On December 15, 1999, she was

allegedly harassed by a supervisor with regard to her mail delivery, but again, she does not allege

that she received any negative job report or employment action.  Finally, when the supervisor's

desk was moved in 1998 to an area closer to her, this may have been inconvenient to Ms. Gaona, but it was not an adverse employment action.

Gaona's complaint should be dismissed because she cannot establish a prima facie case of discrimination due to disparate treatment on any of the above identified four claims.

3.    Retaliation Claims Also Fail

Of the remaining events for which Ms. Gaona has exhausted administrative remedies, she has only listed three of them in her complaint under her cause of action for reprisal for protected EEO activity.  Docket 10 at 5.  Specifically, she claims that on

> . . . . Sept 2, 1997 USPS continued to deny my doctors recommendations as unacceptable and required additional information during this same period of time a "male" letter carrier name Elmelo Punongbayan and Steve (A rural route carrier) were given light duty & accommodation without any harassment, along with other employees who are male and handicapped.  Nov 22 1997 USPS denied my request for advance sick leave, but allowed others such as Wanda Templeton to utilize advance sick leave. Nov 24 1997 USPS put me on restricted sick leave.  . . . .

Id.

To establish a prima facie case of discriminatory retaliation, a plaintiff must show that: (1) [s]he engaged in a protected activity; (2) [s]he was subjected to an adverse employment action; and (3) there is a causal link between the adverse employment action and the protected activity.  Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411 (9th Cir.1987); McGinest v. GTE Service Corp., 360 F.3d 1103, 1124 (9th Cir. 2004).

If a prima facie case is established, the burden then shifts to the employer to proffer an alternative explanation for its action, which the employee may attempt to rebut.

There is no causal link between limitations on the use of sick leave and Gaona's protected activity. As ALJ Carroll noted, during Gaona's testimony at the EEOC hearing, she opined that the postmaster was acting against because of her past activity as union president. Exhibit F, transcript at 36-37. However, it is perhaps easier to demonstrate the absence of a causal connection in the context of the legitimate, non-discriminatory reasons for the USPS's actions.

The first incident involved the USPS's determination that Gaona's return to work ("RTW") documentation faxed from her health care provider on September 2, 1997 was inadequate. Gaona had returned to work earlier that year and had been granted light duty within the restrictions outlined by her doctor. Exhibit G, letter dated June 24, 1997. See also Exhibit H, letter dated January 25, 1997 providing temporary light duty. In both letters Gaona was reminded of her responsibility to provide updates every eight weeks. Id. In the letter granting her light duty assignment, she was reminded to provide and updated Work Restriction Evaluation form by September 2, 1997. Exhibit I, letter dated July 10, 1997. Postmaster James Donaghey explains in his affidavit that, though the requirements for providing updated evaluations were explained to Gaona, she did not always timely provide the necessary documentation. Exhibit J. Donaghey goes on to explain that the September 2, 1997 fax lacked a return to work date. Gaona's supervisor, Ms. Saceda, also notes that the September 2 fax was incomplete. Exhibit K. Additional documentation was provided on September 5, but that submission included additional lifting restrictions. Id. This prompted a light duty meeting on September 8, the first date that the postmaster was available to attend.

The USPS, which had granted Gaona light duty numerous times in 1997, required periodic updates on her medical condition. This is a reasonable precaution for any employer, in part to guard against an employee's worsening condition and in part to guard against employees who may seek permanent light duty. This reporting requirement was not taken in retaliation for Gaona's past EEO activity.

The second and third events occurred on November 22, 1997 when the USPS denied her request for advanced sick leave, and November 24, 1997 when she was placed on restricted sick leave. Gaona had requested 80 hours of advance sick leave on November 20. In his letter denying her request, Postmaster Donaghey listed the factors that are considered: unscheduled absences, sick leave used, leave without pay used, overall attendance profile, assurance that the advanced leave will be paid back and the time that it will take to pay it back. Exhibit L. Donaghey found a negative answer to each. As Exhibit M illustrates, out of 709 work hours earlier in 1997, Gaona was in leave without pay for 408.2 hours, sick leave for 64 hours, and she worked 236.8 hours. Donaghey states in his affidavit that he denied Gaona's request because she did not provide any documentation to support the request and that after reviewing her attendance record he was not sure she would be able to pay back the advance. Exhibit N. Sandra Hicks, Gaona's new supervisor at the time, recommended the denial and that she be placed on sick leave restriction because of her attendance record. Exhibit F at 147-150.

The USPS acted reasonably and in a non-discriminatory manner in denying her request for advanced sick leave. To put it simply, her leave balance was zero and her recent attendance record was very poor. This denial was taken because of her attendance, not because of any past EEO activity.

    4.    <u>Hostile Workplace</u>

Ms. Gaona claims that she experienced disparate treatment in the form of a hostile work environment when he co-worker, Stuart Akagi "verbally accosted me out on back dock while I was preparing to load up my postal vehicle with mail and parcels to deliver for the day. Stuart Akagi was upset at me because I was having a mediation meeting with USPS and department of vocational Rehab . . . ." Docket 10 at 6. As discussed above, this verbal exchange does not amount to a negative employment action. This single incident also did not create a hostile work environment.

A "hostile work environment" is a form of disparate treatment that exists when the plaintiff is subjected to a hostile, intimidating or offensive work environment that is sufficiently pervasive or severe to alter the conditions of the plaintiff's employment. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993). A hostile work environment can be based on any of Title VII's prohibited factors. See <u>Bryant v. Brownlee</u>, 265 F. Supp 2d 54, 65-67 (D.D.C. 2003). However, a limited number of incidents are usually not enough to constitute a hostile environment. <u>Purrington v. University of Utah</u>, 996 F.2d 1025 (10 Cir. 1993). A single act of harassment, if sufficiently severe (e.g. rape) can be enough to constitute a hostile environment. See e.g., <u>Candelore v. Clark County Sanitation District</u>, 975 F.2d 588 (9th Cir. 1992).

An employer can be liable for discriminatory harassment by a non-supervisor if the employer knew or should have known about the harassment and failed to take prompt and appropriate corrective actions. 29 C.F.R. § 1604.11(d).

However, for Gaona "to prevail on a hostile workplace claim premised on either race or sex, [she] must show, [in part, that she] was subjected to verbal or physical conduct of racial or

sexual nature." <u>Gregory v. Widnall</u>, 153 F.3d 1071, 1074 (9th Cir. 1998) (per curiam).  No reasonable person would find the workplace so objectively and subjectively racially [and/or sexually, etc.] hostile as to create an abusive working environment based upon one, ill-defined, verbal exchange with a co-worker in which he called her, according to Gaona, "a troublemaker."[10]

5.     <u>Race, Age, Gender Discrimination</u>

Ms. Gaona's claims of discrimination due to race[11], age[12] and gender[13] are broad generalizations that merely restate her claim that she did not receive as much light duty as she thinks she was entitled to accommodate her myofacial pain syndrome.  These have been discussed, above, in conjunction with her claim of discrimination due to disability.

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  To prevail in a Title VII case for disparate racial treatment, the plaintiff must show that he was "singled out and treated less favorably than others similarly situated on account of race." <u>Gay v. Waiters' and Dairy Lunchmen's Union</u>, 694 F.2d 531, 537 (9th Cir. 1982).

---

[10]  Exhibit F at 44.

[11]  Ms. Gaona is part Hispanic, part Native Alaskan.  When asked which part of her ancestry evoked discrimination, she responded "Probably both."  Exhibit E, deposition at 44.

[12]  Gaona was born on February 8, 1954, bringing her to the age that protection is extended during the period of time relevant to this case.

[13]  Docket 10 at 7-9.

Gaona has not shown that she was denied advance sick leave, placed on restricted sick leave, or that her return to work documentation provided on September 2 was not accepted because of her membership in one of Title VII's protected classes.

Ironically, Gaona does not mention anywhere in her complaint the other two events for which she had exhausted administrative remedies: being reported as being AWOL on January 10, 2000, when she called in to report that she was not coming in because her cat had been injured and, as a consequence, on January 29, 2000, she received a seven day suspension for failing to follow orders when she was told to report to work and did not. Arguably, these might be implied to be within the all encompassing, sweeping representations of continual, unrelenting discrimination from 1995-2004. If so, then as with the other incidents, the agency's actions were objectively reasonable. Emergency leave is not available for the care of a pet. Exhibit F at 220. Gaona opted to stay home to care for her cat instead on leaving the animal at the veterinarian's office. Id. Without approved leave, she was absent without leave and reported as such. Her supervisor, Ron Aherns, testified that since Gaona had received letters of warning for failing to follow instructions, in this case to come to work, the next step in progressive discipline was a seven day suspension. Id. at 221.

The Defendant acted reasonably and in a non-discriminatory manner in finding that she was absent without leave and issuing a seven day suspension as a result. This action was not taken because of any past EEO activity or because Gaona belonged to any particular protected class.

**CONCLUSION**

Ms. Gaona's complaint casts a wide variety of complaints against the USPS over a

twelve year period, but none of her allegations merit relief. She has only exhausted her

administrative remedies for a fraction of her complaints, and for those claims she cannot meet

her threshold burden of showing a prima facie case of discrimination. The USPS's actions either

did not result in an adverse employment action or were taken for a legitimate, non-

discriminatory reason. Judgment should be entered for the Defendant and Ms. Gaona's

complaint should be dismissed.

RESPECTFULLY SUBMITTED on September 6, 2006.

NELSON P. COHEN
United States Attorney


s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
Alaska Bar No. 8906031

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2006,
a copy of the foregoing DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT
was served electronically on
Patricia S. Rose.


s/ Richard L. Pomeroy


Gaona v. Potter
Case No. 3:04-cv-00118-JKS          23