**LAW OFFICE OF PATRICIA S. ROSE**
Patricia S. Rose, WSBA #19046
Attorney for Plaintiff
157 Yesler Way, Suite 503
Seattle, Washington 98104
(206) 622-8964
Email: prose83897@aol.com
/

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ROSA S. GAONA<br><br>    Plaintiff,<br><br>v.<br><br>JOHN E. POTTER,<br><br>    Defendant. | No. CV 3:04-CV 00118-JKS<br><br>DECLARATION OF RANAE R. DAVIS IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDAN'TS MOTION FOR SUMMARY JUDGMENT OF DISMISSAL |

I, RANAE R. DAVIS, am over eighteen years of age and am competent to testify to the following. This statement is based on my personal knowledge, and is true to the best of my recollection and belief.

1. I am currently employed as a Window Clerk in the Clerk craft at the United States Postal Service in Juneau Alaska. I first started with the Post Office in approximately 1986 as a part-

DECLARATION OF RANAE
R. DAVIS IN SUPPORT OF
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-1

time flexible employee as a City Carrier. After approximately two years to the best of my knowledge, I was awarded a full-time regular position, i.e. one that was bid through the local branch of the National Association of Letter Carriers.

2. I had worked in other non-traditional jobs for women previous to my employment with the Postal Service that were in workplace where unions represented the employees so I did get involved in the Union when I joined the Postal Service. To the best of my recollection, one of the labor management programs that I was initially involved with at that time, and one in which I was on the Steering committee, was called EI. That, according to my memory, was an acronym for Employee Involvement. This was when Larry Jackson was Postmaster. Unlike my experience in the years that followed, Larry Jackson was a Postmaster who had a real understanding of the physical demands of being a City Carrier in Juneau. In this city, particularly with our hills and terrain, the demands on City Carriers were particularly harsh. Larry Jackson was more collaborative than others in working to make our conditions less harsh and was much less adversarial than some Postal management I have dealt with were.

3. After about three or four years into my employment, James Donaghey became Postmaster. At that time, there were only

DECLARATION OF RANAE R. DAVIS IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-2

a few, maybe three or four, women carriers, in Juneau. Rosa Gaona was one of them. There was always some resentment from many of the guys that we women were working as they always perceived us to be slackers and not carry our weight, which was not the case.

4. Carrying 70 pound bundles is no easy tasks but the women working were doing the job just like the men. We sometimes did take a bit longer but we were performing to expectations otherwise we would have heard about it from management.

5. In my observation, many of the Postal Service managers, i.e James Donaghey and the supervisors like Dale Zwingleberg, always found excuses to undermine the women and whether they were truly pulling their own weight. I observed that kind of unnecessary attention being placed on Rosa and other women working as Carriers. In fact, even Julie, who had a photographic memory and cased mail incredibly fast and was out on the street faster than a lot of the guys, was criticized as how efficient she was as a City Carrier.

6. Rosa always stood her ground, and like me, was assertive and used the union when necessary to troubleshoot interactions when things got adversarial. There were times then when she was a union official and times when I was. It was a pretty

DECLARATION OF RANAE
R. DAVIS IN SUPPORT OF
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-3

small bargaining unit and in the early days was pretty informal about roles. Rosa's advocacy for herself and other employees, in EEOs and otherwise, through the Union, played a role in managers' attitude towards her in addition to the general disrespectful attitude towards women. Dale Zwingleberg was particularly hostile towards women.

7. I do remember in approximately the mid-1990's, that Rosa was injured on the job and had a lot of challenge from management in coming back with the restrictions that she had. As indicated above, during some of this time, I was the union representative. At some of those meetings, I remember they always were saying that her doctor's information was inadequate. This would be supervisors like Ron Ahrens and Postmaster Donaghey and others.

8. There was a great deal of unnecessary hostility directed at her from my point of view. At approximately the same time, i.e. the mid-1990's, I had arthroscopic knee surgery after stepping into a hole while on the job. To the best of my recollection, I was out on leave for about six weeks and came back with restrictions to six weeks of light duty, i.e. working four hour days, 2 in the office, and 2 on the street. This was because of the limitations on walking and given by my doctor. They honored my documentation. Ron Ahrens was the supervisor

DECLARATION OF RANAE R. DAVIS IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-4

at the time and I did not get the same degree of resistance to my medical information as Rosa did.

9. I remember participating in at last one meeting with James Donaghey where he was very hostile towards Rosa. Some of the reason was the fact that she was a strong, assertive woman and the fact that she was gay. I think Donaghey was particularly uncomfortable with her lifestyle and may have acted on the basis of some of that bias and prejudice. Frankly, I personally did not have those issues and in fact I was used to being perceived as a lesbian myself because of my long history working in the trades.

10. As I have said, Rosa seemed to get attention from both Donaghey and the fellow Letter Carriers. I remember some of them expressing open resentment if asked to carry a part of Rosa's route when she was out on leave. Yet, in my case, I ultimately had an hour of my route taken off as a permanent form of accommodation for my knee problems even after my doctor released me to work full-time. Management accepted that without any fuss and that accommodation was honored for the whole time I continued to work as a Carrier.

11. I don't remember any effort to place Rosa in any permanent light duty or modify her shift, route or workload, bundles or

DECLARATION OF RANAE
R. DAVIS IN SUPPORT OF
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-5

any of the changes that they had made for me. While from this point in time, I am not certain there was another place to send, there was Carrier work and there was no effort to try that I was involved with as a union steward or official.

12. Ultimately, I chose to change crafts to mail processing in 2002 or so because I felt I was ready for a change in work environment from the City Carrier route I was doing. Management actually encouraged me and Kent Erickson, who was then Postmaster, actually told me about the job I eventually took in mail processing at Mendenhall. While I was a Clerk, in 2003, I need to have injections and other treatment for and had to go through an extended reasonable accommodation process through the Anchorage Reasonable Accommodation Committee just to get management to consider and ultimately agree to a change in shift assignment for me. They ultimately did so but they really put up some resistance to that in Anchorage.

13. As indicated above, in contrast, I do remember many male carriers who were given assistance in maintaining their bid assignments when they had either medical issues or other factors or life issues that affected their work performance. For example, I observed a manager, Susan Johnson; actually drive the same individual, John Costello, around on his route

DECLARATION OF RANAE
R. DAVIS IN SUPPORT OF
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-6

because of a restriction on his driver's license due to a DWI or some legal problem. I was even asked to come over from my processing job and do that i.e. drive John's route while he delivered mail, at one point, even though I was no longer a Carrier. This just proves my basic view, which is that if management wants to work with you and your circumstances, they will and can. I never saw that kind of consideration being given to Rosa.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FORGOING IS TRUE AND CORRECT.

Dated at Juneau Alaska this 10th day of September 2006

*(signature)*
RANAE R. DAVIS

DECLARATION OF RANAE R. DAVIS IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-7