**LAW OFFICE OF PATRICIA S. ROSE**
Patricia S. Rose, WSBA #19946
Attorney for Plaintiff
157 Yesler Way, Suite 503
Seattle, Washington 98104
(206) 622-8964 (phone)
(206) 622-2593 (fax)
Email: prose83897@aol.com

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| ROSA S. GAONA<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOHN E. POTTER<br><br>　　　　Defendant. | No. CV 3:04-CV 00118-JKS<br><br>DECLARATION OF ROSA GAONA IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDAN'TS MOTION FOR SUMMARY JUDGMENT OF DISMISSAL. |

　　　　I, ROSA GAONA, am over eighteen years of age and am competent to testify to the following. This statement is based on my personal knowledge, and is true to the best of my recollection and belief, as

DECLARATION OF ROSA GAONA
IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-1

refreshed by my review of various documents from my OPF, and other documents produced in discovery and medical files.

1. I am a former employee of the United States Postal Service. I was first employed by the Postal Service as a Letter Carrier in March of 1986. After training and the satisfactory completion of my probationary period, I successfully performed my work through bid assignments on routes based at the Federal Building station in Juneau Alaska. Exhibit 1 to this declaration is a true and correct copy of one of my early evaluations.

2. I am of mixed Hispanic and Native descent and was active in the Juneau Branch of the National Association of Letter Carriers, the labor organization that governed my employment. I served as its President from approximately 1993 to 1995. In 1991, I first filed and substantially prevailed in a formal complaint of employment discrimination because, in part, of my employer's attempt to discharge me without justification. As the brief for the United States Postal Service acknowledges, I subsequently filed a total of fourteen EEO complaints from that date until I left the Postal Service in 2005. See Exhibit A to Defendant's Brief.

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-2

3. Additionally, as a union member who was assigned to be the person in charge of heath and safety issues, I also vocally supported the rank and file employees in forwarding grievances to management regarding working conditions including inappropriate actions by a fellow Union member and intermittent acting supervisor, Stuart Akagi, who was then Postmaster Donaghey's son-in-law. There were reports of him storing mail at his residence, being verbally abusive to customers, and other clear violations, without any disciplinary consequences to my knowledge.

4. These complaints and grievances against the Postal Service on my part put me in tremendous disfavor with some union members but more importantly Mr. Donaghey's management team and Mr. Akagi particularly. Both coworkers and supervisors and managers were permitted to engage in degrading and derogatory comments and conduct directed at me and behind my back with the knowledge of management, including Postmaster Donaghey who did not take action to prevent the conduct from occurring. I believe he encouraged it.

5. Throughout the period from 1992 to 1995, the hostile working environment engendered by the hostility of Stuart Akagi and James Donaghey, among others, continued and no action was taken to enforce any

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-3

corrective action. On or about October 30, 1995, I injured myself as a result of falling on an icy walk way en route to work from the Federal Building parking lot. As a result of the fall, I suffered a disabling back injury that was initially diagnosed as a lumbar strain and ultimately diagnosed as myofascial pain syndrome. Exhibit 2 to this declaration are true and correct copies of some of the information about my injury and resulting disability provided by me to the USPS and/or federal Office of Workers Compensation Programs (OWCP)..

6. Because of the extent of my injury, and later injuries and flare-ups as I immediately sought medical care and was instructed to take medical leave. I took that leave until December 11, 1995 when I returned on a reduced schedule and with restrictions. I worked intermittently in limited duty and/or light duty assignments from that date until September of 2002. As a result of various exacerbations of my original injury because of work requirements that exceeded my restrictions, I applied for and received federal workers' compensation benefits in approximately 2000-2001 as well. On many occasions between 1995 and 2002, the USPS sent me home without pay rather than letting me work within the craft duties I could

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-4

perform. Exhibit 3 to this declaration is an example of some of leave usage for 1997 as an example.

7. During the period from 1995 to 2002, I frequently attempted on multiple occasions to return to work within the medical restrictions I was given by my treating physicians and was repeatedly rebuffed in my efforts to do so. On some of the occasions when I did return, I was required to work outside of my restrictions causing further injury. Under our union contract, it was supposed to be the practice that management would make every effort to provide light duty or work within the craft. Exhibit 4 to this declaration are true and correct copies of excerpts of the NALC National union contract for the most relevant period. In my situation, I was often given Clerk craft work which caused resentment among co-workers. I know other injured workers were not treated this way.

8. At one point after returning to work, an incident occurred in September 1999 wherein Stuart Akagi threatened my job security and stated that he wanted to see to it and work with management to ensure that I was terminated. Soon thereafter, I was charged with being absent without leave because of an unforeseeable personal emergency without justification and suspended when employees with similar attendance patterns who took

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-5

unscheduled leave for personal needs like fishing trips that were not scrutinized or disciplined in this fashion.

9. Through this case, and before, I have learned that during the period from 1997 to 2004, agents of the Postal Service repeated made derogatory remarks about me to one another and in the presence of my coworkers indicating that I was a "problem" employee, a "troublemaker" "nothing but trouble" and "trying to stir things up" and have also understood that management was attempting to remove me from employment.

10. As a result of the hostility directed at me and the threat to my job security, I developed disabling depression and anxiety and ultimately in 2002, I was diagnosed with Post-traumatic stress disorder (PTSD) after the Union President, Chris Dargan, indicated that he wanted to see me fired.. Exhibit 5 to this declaration are true and correct copies of various medical evaluations and releases that I ultimately received regarding my mental health conditions throughout this period.

11. In 1999, with the intervention of the State of Alaska Department of Vocational Rehabilitation, I negotiated a mediated resolution that would have permitted me to return to work with reasonable accommodations for my physical and mental disabilities. One of these accommodations was use

DECLARATION OF ROSA GAONA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-6

of two bundle casing system that had been provided to similarly situated employees with medical restrictions.

12. In 2000, Postmaster Donaghey instructed Ken Cickler to remove some of the accommodations provided to me in my presence and the presence of Union President Chris Dargan who did not intervene or attempt to represent me on my concerns as to being forced to work outside of my medical restrictions. I even got a written directive not to case mail. Exhibit 6 to this declaration is a true and correct copy of the documentation provided by Mr. Cickler.

13. Between 1999 and 2002, there were many times that I was not afforded opportunities to work within the letter carrier craft on numerous occasions. Instead, I was provided light duty work in the clerk craft while Part-time Flexible Carriers were provided the carries job opportunities. As a result, I was absent for an extended period from September 10, 2002, until the spring of 2004. I admit that there were periods that my depression and anxiety was also disabling that I could not work but I was always willing to try and not working was more stressful at times.

14. Beginning in 2003, I understood that my physicians were prepared to release me to return to work as a letter carrier albeit with restrictions due

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-7

to my continuing mental and physical impairments. Despite my physician's general certification that I could generally return to work as a City Carrier with some weight limitations as long as I was not required to report at the Juneau Federal Building location, the Post Office made no affirmative efforts to assist me in my ability to obtain work assignments, routes or parts of routes, that could be based outside of that location or that would fit within these restrictions. I was even willing to relocate if I had to.

15. On my own initiative, I explored the possibility of performing a limited duty assignment in Juneau on a portion of a more rural Route 10 / Douglas route but I later learned that the position had been awarded by bid to a less senior employee, Chris Dargan. after my request to be considered for it under the contract's language in Exhibit 4. During this period, I also began interactions with Ed Roehm and Scott Railing of the Anchorage USPS Reasonable Accommodation Committee and Occupational Health staff in Anchorage Alaska to provide information that I assumed would facilitate my return to work. Throughout 2003, I provided medical and particularly mental health information from such health providers as Drs Schultz, Stillner, and Ellis. I understood that each of them supported the Douglas route assignment as a reasonable accommodation within their

DECLARATION OF ROSA GAONA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-8

restrictions. When the accommodation request was not seriously considered and I learned that Dargan had bid into that work assignment, I was very distressed. I filed an EEO complaint that, with my current lawyer, I exhausted to the EEOC's Office of Federal Operations. When I received the paperwork denying it again, I purposefully did not file a new law suit on it because the Post Office had informed me in the appeal process that they considered the issues as already addressed in this litigation. Exhibit 7 are true and correct copies of some of that correspondence related to the Douglas route case.

16. Instead of engaging in the interactive process I understood was required by law, on or about February 4, 2004, the Post Office inexplicably concluded that I did not meet the criteria for reasonable accommodation as defined in the Rehabilitation Act. Exhibit 8 to this declaration is a true and correct copy of that document. A short while later, management officials of the Post Office took action on or about March 3, 2004, to involuntarily and permanently remove me from my career by asserting that I was unable to perform my position responsibilities due to my disabilities.

17. Only after a grievance under the collective bargaining agreement and intervention by the regional officers of my labor organization in

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-9

cooperation with the efforts of private counsel through EEO complaints regarding the agency's failure to accommodate my disability was the separation rescinded. Exhibit 9 to this declaration are true and correct copies of some of the documents related to the proposed removal and the union's grievance in response.

18. Ultimately, I was placed in a limited duty assignment in the Clerk craft as a Custodian at the Mendenhall facility effective late April of 2004. As I stated, when I tried to address the failure to reasonably accommodate me as a Carrier n the EEO administrative process in USPS Case No. 4E-995-008-04, EEO and then EEOC told me the issues were already addressed in this litigation. See previously mentioned documents.

19. Throughout the period from late April 2004 to my separation date in 2005, Federal Building management officials like Susan Johnson , my technical manager even though she was at the Federal Building Station and I was at the Mendenhall station, continued to scrutinize aspects of my work in a manner unlike that of my coworkers. As a result, I filed several EEOs during this time and tried to resolve them through mediation without any success. For example, I was scrutinized for my supervisor's authorization for me to work a limited tour without a lunch break while similarly situated

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-10

1 employees also under Susan Johnson's supervision worked eight hour tours 2 through their lunches without such scrutiny.

20.  Despite the unwelcome scrutiny of my work performance by management, I believe I successfully performed the essential functions of my modified duty assignment as a Maintenance Custodian and had positive work relationships with my immediate supervisors, particularly Susan Hall. As I stated, between 2004 and 2005, when I tried to address either the failure of the reasonable accommodation process that occurred from 2003 to my placement in the limited duty assignment in the EEO administrative process, or the ongoing hostility, through administrative complaints and representation by my current lawyer, we were told that those issues were already in this lawsuit and would be addressed here. Exhibit 10 to this declaration are true and correct copies of examples of this representation.

21.  The final straw came when on or about May 10, 2005, after Susan Hall left the Post Office. Initiially, I was supervised by Tanya without incident. Then, I learned that I was going to be supervised at Mendenhall by Dailang Seceda, one of the supervisors who had been assigned to the Juneau Federal Building and who had been part of the hostile work environment that I experienced there. That upset me enough that I took

DECLARATION OF ROSA
GAONA IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-11

some off because of it.  Because I understood that my physicians recommended that I have no supervision or oversight by those individuals, I perceived the action to be a continued attempt to undermine my successful return to work and more evidence of the continuing hostile work environment. I did file a new EEO about it and otherwise raised concerns about this assignment with local management.  When that complaint was not remedied or investigated in a timely basis,  and Ms. Seceda continued to act in a verbally abusive and intimidating manner towards me on the work floor, I felt no other choice but to resign my employment rather than face the continuing  hostility and more mental heath consequences that had plagued me for years.

22.     Because whenever I filed new EEOs, officials were constantly refusing to investigate them seriously, or stating that the issues were contained in this litigation ,or were too trivial to be part of a separate claim, that is why I want all of them addressed in this lawsuit . I would be happy to provide investigative file materials to support of all of this but did not wan to burden the Court with too much information. .

DECLARATION OF ROSA GAONA IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-12

1
2
3
4
5   I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF
6   THE UNITED STATES THAT THE FORGOING IS TRUE AND
    CORRECT.
7
8
9   Dated at Juneau Alaska this 10thday of November 2006.
10
11
12
        *Rosa Seabreeze Gaona* (signature)
13      ROSA SEABREEZE GAONA
14
15
16
17
18
19
20
21
22
23
24
25  DECLARATION OF ROSA
    GAONA IN SUPPORT OF PLAINTIFF'S
26  OPPOSITION TO DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT-13