EXHIBIT NO. _____

EXHIBIT NO. 1

RECEIVED JUL 7 1992

EMPLOYEE'S STANDARD PERFORMANCE EVALUATION

TO SUPERVISOR: DALE ZWINGELBERG, SUPERVISOR OF DEL & COL
GAONA, ROSA S
EMPLOYEE_____ SOC SEC# 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
CITY CARRIER
POSITION_____ RETURN TO PERSONNEL BY 3-12-92
REF: ELM, ISSUED 12, DATED 05-01-89, CHAPTER 3, SEC 370
373.1 STANDARDS; EMPLOYEE'S PERFORMANCE IS EVALUATED ON THE BASIS
OF THE FOLLOWING (PERFORMANCE EXPECTATION):
(CODES: O=OUTSTANDING, S=SATISFACTORY, U=UNSATISFACTORY)

I    QUANTITY OF WORK:    WORK PRODUCTION
                          S  AMOUNT OF WORK
II   QUALITY OF WORK :    WORK PRODUCTION
                          S  ACCURACY
                          S  NEATNESS
                          S  THOROUGHNESS
III  MANNER OF PERFORMANCE:
     ATTENDANCE:          S  RELIABILITY(NUMBER OF TIMES SICK 1) SL 8.00
                          O  PROMPTNESS(NUMBER OF TIMES LATE 0)
     SPECIFIC REQUIREMENT IN THE AREA OF RESPONSIBILITY:
                          S  APPLICATION TO DUTY
     RELATIONSHIP WITH CO-WORKERS:
                          S  ABILITY TO GET ALONG WITH OTHERS
     CONDUCT:
     COOPERATIVENESS: *Rosa shows a real concern about her responsibilities*
     OTHERS:(WHERE APPROPRIATE AND/OR APPLICABLE) *and customers and wants*
                          O  INITIATIVE                        *to perform well*
                          S  JUDGMENT
                          S  ABILITY TO DIRECT THE WORK OF AREAS
                          S  ABILITY TO ESTABLISH AND ATTAIN MANAGEMENT
                             OBJECTIVES, ETC.
                          S  CONTACTS WITH PUBLIC
                          S  WORK METHODS & HABITS (SAFETY&ACCIDENT)

FINAL
____  THIS EMPLOYEE EXCEEDS THE EXPECTATION OF THE POSITION, FAR
      ABOVE THE PERFORMANCE AND ACHIEVEMENT OF MOST EMPLOYEES IN
      TERMS OF PRODUCTIVE EFFORT, PROFICIENCY, AND SIGNIFICANT
      CONTRIBUTIONS TO THE POSTAL SERVICE.
      CHECK ONE (IF APPLICABLE):      ____ CERTIFICATE
                                      ____ SPECIAL ACHIEVEMENT
                                      ____ QUALITY STEP INCREASE
 X    THIS EMPLOYEE IS AT PRESENT SATISFACTORY PERFORMANCE. STEP
      INCREASE IS RECOMMENDED.
____  THIS EMPLOYEE IS REPEATEDLY OR CONSISTENTLY BELOW THE
      MINIMUM REQUIRED EXPECTATION OF THE POSITION. STEP INCREASE
      BE WITHHELD.

REMARKS: *My impression from observing Ms Gaona is that she is very intent on doing her job well. She has been supportive to me during my detail and although she has become stressed at times over the workload, her frustration is not in doing the work, but rather that there is more than she can complete in 8 hrs.*

PAGE 1 OF 2

CONTINUED
EMPLOYEE'S STANDARD PERFORMANCE EVALUATION

I HAVE REVIEWED MY EVALUATION:

*[signature]*          5/22/2
EMPLOYEE'S SIGNATURE          DATE

*[signature: Keith A. Drake]*          5/22/92
EVALUATOR/SUPERVISOR'S SIGNATURE          DATE


_____          _____
SIGNATURE OF REVIEWING OFFICIAL          DATE
(MSC INSTALLATION HEAD/DIRECTOR)

EXHIBIT NO. 2

**ANCHORAGE FAMILY & INDUSTRIAL CLINIC**

THOMAS LIGUS, M.D.
4045 Lake Otis Parkway, Suite 107
Anchorage, Alaska 99508
Telephone: (907) 562-3727

May 20, 1996

Lois Wagner, R.N.
Occupational Health Nurse
U.S. Postal Service
P.O. Box 199452
Anchorage, AK  99519-9451



RE:  Rosa S. Gaona
Chart #: 47035

Dear Ms. Wagner:

I examined Ms. Gaona on the 29th of April for fitness for duty. As you recall, she is a 42-year-old woman, a mail carrier in Juneau, with longstanding work-related injury which occurred on 10/30/95.

The patient notes the symptoms have diminished about 50% since the injury. She has been on a combination of medical and chiropractic treatments, which are continuing. She is doing home stretching exercises as well.

The patient indicates she returned to work on the 23rd of March of this year with restricted lifting, with no lifting over 30 pounds. She relates no improvement in her condition since returning to work. She also eludes to stresses at work--possibly some conflicts with supervision.

The patient notes some initial left leg radiation of her symptoms, but this has not been a factor recently. She does relate ongoing problems staying asleep.

Examination shows reduced lordotic curve. Range of motion was diminished to extension of lower back, and she has about 5 degrees of extension before she reports significant discomfort. Likewise, mild restriction of lateral bending is noted. This is a minimal loss of range of motion. She has near full flexion motions of the lower back. No significant hypertonicity is noted, but diffuse tenderness to palpation was noted in the lower lumbar and sacral areas. There is no midline tenderness. Neurovascular examination in the lower extremities is unremarkable, and gait was normal.

This lady has low back pain which is ongoing and is influenced by some apparent conflict in the workplace, though statistically improvement is diminished in individuals with legal

EXHIBIT NO. 2

Rosa S. Gaona
5/20/96
Page 2

action or other administrative conflicts in the workplace. My examination also showed microscopic hematuria, and she notes that she plans to have further evaluation of this problem this summer; so this has been previously noted.

Besides my evaluation, I have reviewed, in detail, Dr. Chris Horton's orthopedic evaluation. We are both in agreement that this woman may return to duty with the limitations that are cited by her physician. That is, no lifting over 30 pounds and no more than eight hours per day of work. Since this woman has had symptoms for so long a duration, I am not strongly optimistic that her condition will improve, especially in light of the conflicts referred to above. We should receive an update from her primary physician in Juneau in approximately a month to review her status at that time.

Sincerely yours,

Tom Ligus, M.D.


TL/jab



Joan A. Morgan, Claims Examiner
Employment Standards Administration
Office of Workers' Compensation Programs
1111 Third Avenue, Suite 650
Seattle WA 98101-3211

FEB - 4 2005

RECEIVED
FEB 11 1997
OHNA-ANCHORAGE

Re: Rosa Gaona
File No: 14-0309172

6 February 1997

Dear Ms. Morgan:

Ms. Gaona presented on-time in my office today for her Second Opinion Evaluation. I had previously received and reviewed extensive documentation from your office. Although I had no x-ray or MRI films to review I did have reports from them.

I will attempt to answer your questions:

1) The initial injury appears, in retrospect, to have been an **aggravation of previously existing multi-level degenerative disk disease of the lumbar spine**. This was documented by x-ray and MRI. At some point she apparently had sciatic symptoms which could have stemmed from that or from the fact that she fell directly onto her buttock, potentially compressing her sciatic nerve there. Those latter symptoms have resolved.

2) Yes. She now has some residual low back discomfort especially after standing for long periods of time, but most of her symptoms are due to bilateral trochanteric bursitis and gluteal tendinitis/bursitis. Findings include focal tenderness directly over the greater trochanter and a positive gluteal stretch test. I realize these are not strictly objective findings, but they come close. I believe this is related to her 10/30/95 injury in that she did fall directly onto her buttock, and the altered gait which resulted from that injury could be causally and temporally linked to her present symptoms, no other explanation being obvious. I have ordered a CBC, sedimentation rate, and arthritis screen to rule out any systemic disease factors, the results from which are pending, but will be attached to this letter.

3) I am not able to comment on her neck/shoulder symptoms, but she did note that her hip symptoms were worse when the weather outside was cold, wet, or windy, and with chronic trochanteric bursitis, that would seem to be a valid observation since she does have an outside walking mail carrier route.

255 E. Fireweed Lane, Suite 101        Anchorage, Alaska 99503        (907) 276-7277

4) Under most normal conditions I would have expected the symptoms following the mechanical aggravation of her pre-existing lumbar degenerative disc disease to have abated over time, perhaps 3-6 months, although it has been my experience that when chiropractic or other manipulative care continues for an extensive period of time, as it did in this case, such an outcome does not occur and the patient remains symptomatic. People who have multi-level lumbar degenerative disc disease do poorly when having to stand for periods of time in excess of an hour or so. This should not imply that her mechanical symptoms will not still abate given the appropriate job mechanics.

5) Insofar as Dr. Bursell's treatment is directed at her trochanteric bursitis, I believe it is appropriate. I have provided her some additional suggestions to discuss with Dr. Bursell (see #7 below). I am not qualified to discuss his use of Prozac for the depression he has diagnosed.

6) Yes, I believe a 30# maximal lifting restriction is appropriate (or "light" work which would be 25#/10#) although I believe she should be able to reach a "medium" level (50#/25#) with improvement in her symptoms. Her standing should be less than 4 hours daily, and not more than an hour at a time. Her walking, until her trochanteric bursitis has subsided, should be limited to less than 2 hours daily, and thus a "mounted" mail carrier position would be ideal. She should also be restricted from having to spend any significant time outside in temperatures much below freezing (factoring in wind chill).

7) Yes, and I see it to be of two types. <u>First</u>, specific medical care: water-based cryotherapy; phonophoresis with 10% cortisone daily x10-12 treatments; stretching of her gluteals, ITB, hamstrings, and sartorius; strengthening exercises for her gluteals; discontinuation of her long-standing NSAID for several weeks. All, except the ultrasound therapy can be done at home. <u>Second</u>, I believe Ms. Gaona needs to be on a self-directed and self-motivated general fitness and conditioning program (3-5x/week indefinitely) such as available at the Juneau Racquet Club. I believe this should be Ms. Gaona's financial responsibility. I do not think she needs formal physical therapy except as noted above. I also would strongly discourage further chiropractic or manipulative care.

8) As should be evident from the above, I do not believe she has recovered from this injury, but would expect that this should occur over the next 3-6 months were the above suggestions followed by all parties involved.

Sincerely,

Jay E. Caldwell, MD, MPH, FACSM
jec/JEC d22 gaona

cc: patient, Lois Wagner, RN (USPS)

SEATTLE BONE & JOINT PHYSICIANS, P.C.
801 BROADWAY, #027
SEATTLE, WASHINGTON 98122

RICHARD G. McCOLLUM, M.D.                                    OFFICE (206) 292-6210

May 6, 1998

RE:      Rosa Geona
EMPLOYER: U.S. Postal Service
CLAIM NO: 14-0309172
DOI:     10/30/95

**IDENTIFICATION:** This is a 44-year-old letter carrier for the U.S. Postal Service who is seen to evaluate bodily injuries sustained in the industrial injury of 10/30/95.

**HISTORY OF PRESENT ILLNESS:** The Statement of Accepted Facts indicates she fell on an icy foot bridge en route from the Employee's parking lot to the Federal Building Postal Station. She fell against a railing landing on her right side.

She first sought treatment with Dr. Chu, a family practitioner. She was referred to an orthopedist Alan S. Gross, M.D. The claimant did not see Dr. Gross until 12/19/95, which was seven weeks post injury. She had a self referral to a chiropractor clinic and was first seen by Dr. Shepro, and then referred to Dr. Connor-Allen. Lumbar and cervical x-rays were done on 12/5/95. The claim was accepted for a low back strain.

On 12/11/95 she was released to work four hours a day with limited lifting and freedom to walk about frequently. On 4/15/96 she was released to full-time light duty with lifting limited to 30 pounds. On 4/30/96 at the request of the postal service she was examined by Dr. Christopher Horton, orthopedic surgeon. On 10/4/96 she was referred by Dr. Gross to Dr. John Bursell, a physiatrist. Today the patient says that she actually fell on her left side, not her right side.

She has been on and off work, but she just returned to work on April 8th, and she is only part-time. She says she was full-time at the time of the injury, now she is only working part-time. She works five days a week but she only works 3-4 hours a day. She says that starting sometime around July 1997 she started having Dextrose injections by a neurologist into the low back. She points to the left low back. This was actually done on both sides. She says it was done for myofascial pain.

Continued...

May 6, 1998                                                       RE:  Rosa Geona
Page 2 of 5

At this time she has constant low back pain, which hurts every waking moment. It is increased with stress and decreased with the injections. She also has had some numbness in the left posterior thigh which comes and goes. It only happens with stress, that is the numbness in the left calf is only with stress. She says she has migraine headaches and pain in both of her knees, and also in her shoulder on the left side, and her neck. She says she has also gained about 40 pounds due to this injury.

**RECORD REVIEW:** X-rays of the lumbar and cervical spine on 12/5/95 were normal except for a smooth rounded ossific density in the posterior aspect of the C-6 spinous process. There was no evidence of any acute injury or any acute fracture.

She was seen by Dr. Gross on 12/19/95, and at that time it stated that she had pain in the low back and neck, and had some numbness into the right leg, involving the mid toes and on the left side to the posterior aspect of the calf, and that it subsequently resolved, and she only had occasional numbness. She doesn't have any pain with coughing or sneezing or radicular symptoms with those maneuvers. Her back pain was essentially resolved, but her major complaint was mild discomfort in her neck. She had no subjective weakness or sensory loss.

She had some physical therapy. She had no tenderness in her neck or in her thoracolumbar spine. She had 2+ knee reflexes, 1+ at the ankle, no clonus and the toes were down going. Motor strength in the upper and lower limbs was normal as was sensation to soft touch. X-rays of the cervical and lumbar region were unremarkable. It was stated that she had a cervical and lumbar sprain secondary to the fall. She was responding well to chiropractic manipulation, and that doctor recommended she continue doing that. He did not see any surgical indications. He said if she had any weakness or loss of function one could do an MRI, but he didn't see any indication for it. He saw her again on 1/15/96, and the chiropractor was doing intermittent manipulations. She was improving. She thought that stress caused a lot of her residual problems. The exam was not particular remarkable except for some tenderness in the left paraspinal muscle region. He said she had a lumbar strain with improvement, and apparently he endorsed further chiropractor treatment. He did not see any evidence of a herniated disc or need to do an MRI.

The patient was seen by Christopher Horton, M.D. on 3/3/96, and the impression was degenerative lumbar disc with protrusion and

Continued...

May 6, 1998  
Page 3 of 5                                                RE:   Rosa Geona

radiculopathy and trochanteric bursitis of the left hip. That report indicates she had also injured the right shoulder during the fall. She had been to chiropractors before this injury, for maintenance, but had never had any problems that she had with this injury. She had some tenderness to palpation and percussion of left greater trochanter only, and some pain on internal and external rotation of the hip. X-rays showed no abnormality of the left hip. Based on the history and physical this examiner cannot see how he could come up with a diagnosis of degenerative lumbar disc with protrusion and radiculopathy when there were no findings to substantiate that diagnosis. In any case, he ordered an MRI, which was done on 5/2/96, and it was stated she had some degenerative disc disease at L-3,4, L-4,5 and L-5/S-1 and a small central protrusion at L-3,4, but no evidence of impingement of a thecal sac. She was released to limited full duty.

The office entry of 10/1/96 indicated that she had not had significant improvement with chiropractic. She still had low back pain, but no leg component, and was having no bowel, bladder, or motor or sensory complaints. She was working on a limited full-time basis, eight hours a day with a 50 pound lifting restriction. She had no tension signs and no abnormalities on the exam. It was stated she had chronic low back pain. He stated that it was not unlikely that further chiropractic manipulation would help. He did not see any surgical indication.

On 10/4/96 she was seen by Dr. Bursell, and he diagnosed chronic low back pain and intermittent neck pain, but noted no neurological deficit. He also felt that she might have some bursitis of the left knee and also bilateral trochanteric bursitis, left greater than right. He did inject the left knee. She says today that injection did not help.

Dr. Caldwell, M.D. wrote letter to Joan Morgan at O.W.C.P. on 2/6/97 indicating the patient had an aggravation of pre-existing multilevel degenerative disc disease of the lumbar spine documented by x-ray and MRI. It was stated she had some residual symptoms. He felt that a mechanical aggravation of her pre-existing lumbar degenerative disc disease would have abated after three to six months. He also stated it was his experience that with manipulative or chiropractic treatment, if it continued for an extensive period of time as it did in her case, the outcome did not occur as he had described, and the patient would remain symptomatic.

Continued...

May 6, 1998
Page 4 of 5                                                    RE: Rosa Geona

She was seen on 10/1/96 and then next by Dr. Gross on 4/3/97. It looks like she had a new problem. She had been well until 1/29/97 when she fell backwards at work and he at that time diagnosed sprains of the shoulder, and recommended physical therapy. Dr. Bursell on 4/23/97 diagnosed bilateral rotator cuff syndrome. He put her on a lifting restriction of 30 pounds for her shoulders. She had blood work and it was recommended that she see a rheumatologist. Dr. Bursell wrote a letter to Delange Saceda, City Carrier supervisor in Juneau, Alaska stating that she was motivated to continue working full-time. She says at that time she was working full-time. Maureen Longworth, M.D. wrote a letter to Dr. Brian, indicating that the patient had chronic low back and left hip pain, and also had developed headache. She was anxious to return to work, and she was not working at that time.

Physical therapy notes were reviewed for 1997.

She says she has neck pain on both sides, posterolaterally, in the left trapezius. She has some left upper interscapular pain and sort of pins and needles. There is no upper extremity symptoms. She has pain in her anterior knees. There is no rhyme or reason for this.

**PHYSICAL EXAMINATION:** The exam was done in the presence of Dorothy as a chaperone. I indicated to her that I did not want her to do anything that she felt she couldn't do. She is 5'3-1/2" tall and weighs 196 pounds dressed. She had a normal cervical and lumbar lordosis and dorsal kyphosis. The pelvis was level. There was no buttock atrophy or sag. Trendelenburg and Romberg tests were normal. There was tenderness to light touch in the left low back and in the left cervical dorsal region. There was no cervical, dorsal, or lumbar atrophy or spasm. There was no shoulder girdle atrophy, spasm, tenderness, redness or crepitus. The impingement sign was negative for each shoulder. She had full range-of-motion throughout the upper extremities, which was symmetrical. This included the shoulders. The biceps, triceps, brachial radialis, ankle and knee reflexes were +2, left and right. Motor strength, sensation to pinprick, and circulation and pulses in the upper and lower limbs were normal. Sitting and supine straight-leg raising were negative to 90 degrees, left and right. She had full range-of-motion of her neck and low back. As an example cervical flexion was 50 degrees. Extension was 60 degrees. Rotation was 70 degrees, left and right. Tilt was 45 degrees, left and right. Lumbar flexion was 90 degrees. Extension was 30 degrees. Rotation was 45 degrees, left and right. Lumbar tilt was 30 degrees, left

Continued...

May 6, 1998
Page 5 of 5
RE: Rosa Geona

and right. Phalen, Adson, and Tinel signs were normal.

DIAGNOSES: 1) Lumbar strain due to the injury of 10/30/95. 2) She might also have had a cervical strain due to the injury of 10/30/95.

COMMENT: There is some difference of opinion among the diagnoses given to her. But I believe she has had a mild lumbar strain at the same time. She did have initial symptoms in the neck initially early in the course of the treatment of this condition. I do not believe she has any shoulder problem. The shoulder pain is posterior and trapezial and is secondary to a cervical strain. There is no evidence of any shoulder condition. I also see no evidence of any knee condition. The knee exam was normal. She had full motion of both knees with no instability or crepitus, and the specific testing signs were not remarkable, and there was no effusion of either knee.

I believe at this stage her condition is fixed and stable. There is no need for any further diagnostic or therapeutic measures. Based on the absence of any significant positive objective findings she can work in an occupation of her choice without any restrictions. I am unable to explain her current symptoms. For instance, I do not know hwy one would have constant low back pain, increased with stress. I do not know why a dextrous injection would be beneficial for any organic lumbar condition. I do not see any rationale in that kind of treatment. Also, the fact that she has left posterior calf pain that is aggravated by stress does not match any pathophysiological condition that I am aware of. I do not see any rationale as to how her neck and shoulder condition could be attributed to a fluctuating temperature at work around the period of September of 1996.

I do not see the need for the treatment that she had by Dr. Bursell, and certainly there is no need for work restrictions at this time. I believe she would normally recover from a fairly minor injury such that she had within two to three months following 10/30/95.

Richard G. McCollum, M.D.

RGM:ts

847.2
5-13-97
Sent

Further information concerning restoration rights may be obtained from your agency or any OPM area office. You may also wish to contact your former employing agency or OPM for advice on continuing any health insurance and/or life insurance coverage.

Sincerely,

J. D. Dean
Senior Claims Examiner

Enclosures


cc: US POSTAL SERVICE
    ALASKA
    ANCHORAGE DISTRICT OFFICE
    3720 BARROW STREET
    ANCHORAGE AK 99599