# Duty Status Report

Next Appt
3/6/02 2:00 PM

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

This form is provided for the purpose of obtaining a duty status report for the employee named below. This request does not constitute authorization for payment of medical expense by the Department of Labor, nor does it invalidate any previous authorization issued in this case. This request for information is authorized by law (5 USC 8101 et seq.). Information collected will be handled and stored in compliance with the Freedom of Information Act, the Privacy Act of 1974 and the OMB Cir. A-108.

OMB No. 1215-0103
Expires: 10-31-94

OWCP File Number (if known)
A140355520

## SIDE A - Supervisor: Complete this side and refer to physician

1. Employee's Name (Last, first, middle): Abao, Rosa S
2. Date of Injury (Month, day, yr.): 10/20/01 (06:00)
3. Social Security No.: 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
4. Occupation: Letter Carrier
5. Describe How the Injury Occurred and State Parts of the Body Affected:

6. The Employee Works: 8 Hours Per Day, 5 Days Per Week

7. Specify the Usual Work Requirements of the Employee. Check Whether Employee Performs These Tasks or is Exposed Continuously or Intermittently, and Give Number of Hours.

| Activity | Continuous #lbs. | Intermittent #lbs. | Hrs Per Day |
|---|---|---|---|
| a. Lifting/Carrying: State Max WL | 10 | | 7 |
| b. Sitting | | X | 1-5 |
| c. Standing | X | | 2-6 |
| d. Walking | X | | 2-6 |
| e. Climbing | | X | 1 |
| f. Kneeling | | X | 1 |
| g. Bending/Stooping | | X | 30 min |
| h. Twisting | | X | 2 |
| i. Pulling/Pushing | | X | 1-6 |
| j. Simple Grasping | X | | 8 |
| k. Fine Manipulation (Includes keyboarding) | | X | 1 |
| l. Reaching above Shoulder | | X | 2-4 |
| m. Driving a Vehicle (Specify) | X | | 4-6 |
| n. Operating Machinery (Specify) | | | |
| o. Temp. Extremes | works outdoors 4-6 hrs | | range in degrees F |
| p. High Humidity | works outdoors 4-6 | | |
| q. Chemicals, Solvents, etc. (Identify) | N/A | N/A | |
| r. Fumes/Dust (Identify) | Normal | | |
| s. Noise (Give dBA) | Normal | | dBA |

t. Other (Describe):
Lifting/Carrying - 10-20 lbs 7 hrs
Lifting/Carrying intermittent 20-50 lbs min int part
Lifting/Carrying max 50-100 lbs int

## SIDE B - Physician: Complete this side

8. Does the History of Injury Given to You by the Employee Correspond to that Shown in Item 5? ☑ Yes ☐ No (If not, describe)

9. Description of Clinical Findings: disc LSSP

10. Diagnosis Due to Injury: back injury
11. Other Disabling Conditions:

12. Employee Advised to Resume Work? ☑ Yes, Date Advised ___/___/___  ☐ No

13. Employee Able to Perform Regular Work Described on Side A?
☑ Yes, If so ☑ Full-Time or ☐ Part-Time ___ Hrs Per Day
☐ No, If not, complete below:

| Continuous #lbs. | Intermittent #lbs. | Hrs Per Day |
|---|---|---|
| except lifting over 50 lbs | | |

14. Are Interpersonal Relations Affected Because of a Neuropsychiatric Condition? (e.g. Ability to Give or Take Supervision, Meet Deadlines, etc.) ☐ Yes ☑ No (Describe)

15. Date of Examination: 1/14/02
16. Date of Next Appointment: 8 wk
17. Specialty:
18. Tax Identification Number: 920162761
19. Physician's Signature: [signature] MD
20. Date: 1-14-02

Form CA-17
Rev. July 1991

 Medical Consultants Network®

Medical Consultants Network®

901 Boren Avenue, Suite 1400
Seattle, WA 98104-3529

(206) 621-9097
(800) 636-3926
Fax (206) 623-1956
network@mcn.com

February 13, 2002

Karen E. Hopps
Claims Examiner
U.S. DEPARTMENT OF LABOR
Employment Standards Administration
Office of Workers' Compensation Programs
1111 Third Avenue, Suite 650
Seattle, WA 98101-3211

FEB 21

Re: Rosa Gaona
File Number: 140355520
Date of Injury: October 20, 2000
MCN Number: 1-RST4

Dear Ms. Hopps:

Thank you for allowing Medical Consultants Network, Inc., to schedule an independent medical examination on Rosa Gaona. The following is a report of the examination performed on February 13, 2002. Scott Van Linder, MD, Lewis B. Almaraz, MD, and the examinee were present. Drs. Linder and Almaraz prepared and dictated this report.

The opinions expressed in this report are those of the physician, and do not reflect the opinions of Medical Consultants Network, Inc. The examinee was informed that this examination was at the request of the U.S. Department of Labor, that a written report would be sent to that agency, and that the examination was for evaluative purposes only. Furthermore, the examinee was informed that the purpose of the examination was to address specific injuries or conditions, as outlined by the requesting party, was not meant to constitute a general medical examination, and is not a substitute for her personal physician(s) or health care. The examinee was informed at the time of the examination not to engage in any physical maneuvers beyond what she could tolerate, or which she felt were beyond her limits, or could cause physical harm or injury.

The dictated report is as follows:

**CHIEF COMPLAINT:**

Chronic low back pain.

Medical Consultants Network, Inc.  
February 13, 2002

File Number: 140355520  
Re: Rosa Gaona  
Page 2

## HISTORY OF PRESENT INJURY:

Ms. Gaona is 48 years of age and has been employed by the United States Postal Service as a letter carrier in Alaska. We are focusing on an injury, which occurred June 10, 2000, but there is a significant pre-existing history that deserves summarization at this point.

Her back problems appear to date back to a fall of October 30, 1995, about six and a half years ago, when she slipped and fell on a foot bridge, falling against a railing and then falling to her right side. She was diagnosed as having a low back strain and was treated with various conservative means of treatment including anti-inflammatory medication and physical therapy.

Her progress was slow and she elected chiropractic treatment beginning December 1, 1995. The chiropractor took her off work for 10 days and then released her to light-duty, half-time work. On April 16, 1996, about four months later, she was released to full-time, light-duty work with a 30-pound weightlifting restriction and to be provided a wheeled carrier for delivering mail.

An independent medical examination was carried out by Christopher Horton, MD, an Anchorage, Alaska, orthopedic surgeon, who concluded that Ms. Gaona had degenerative disc disease with a disc protrusion causing some radiculopathy, as well as trochanteric bursitis of the left hip. X-rays of the left hip were felt to be normal. Dr. Horton obtained an MRI scan which showed degenerative disc disease from L3 to S1 with a small central disc protrusion at L3-4 but without neural involvement. She was released to return to "limited full duty."

Ms. Gaona continued receiving chiropractic care, which she determined was really not helping her. She continued to receive chiropractic care seemingly without particular benefit.

In April of 1997, she came under the care of Alan S. Gross, MD, who recommended physical therapy with a 30-pound weightlifting restriction. She was also evaluated by a rheumatologist who did not find any evidence of any generalized inflammatory arthritic condition.

On May 6, 1998, another independent medical evaluation was carried out by Richard G. McCollum, MD, a Seattle orthopedic surgeon. He felt the diagnosis was that of a lumbar strain as due to the industrial injury of October 30, 1995, aggravating her underlying degenerative condition. He felt her condition was fixed and stable with no further evaluation or treatment indicated and with no ratable impairment. He did not feel that any work restrictions were indicated.

Subsequently John P. Bursell, MD, physical medicine specialist, wrote a letter to the claims manager indicating he felt that the industrial injury had brought about stress and depression.

Ms. Gaona had some subsequent periods of being off work for various, relatively short periods of time but eventually returned to work full time in a light-duty capacity.

Medical Consultants Network, Inc.  
February 13, 2002

File Number: 140355520  
Re: Rosa Gaona  
Page 3

---

She came under the care of Jana Linfield, MD, and others at the Southeast Alaska Regional Health Consortium in Juneau. They had recommended no lifting over 50 pounds and no twisting greater than 30 degrees. They also stated she had a myofascial pain syndrome.

On July 6, 2000, Ms. Gaona reported to Maureen Longworth, MD, that she had been ordered to twist more than 30 degrees by a supervisor and this had caused incapacitating pain. She had presented to the doctor apparently in tears and had also gone to an emergency room the day before, regarding this as a major setback. Dr. Longworth treated her with pain medication and anti-inflammatory medication along with physical therapy and acupressure. She recommended a 10-pound weightlifting limit and other restrictions.

On November 4, 2000, Ms. Gaona reported to Sonny Chandler, PA-C, with yet another aggravation, which had occurred on October 21, 2000. This apparently related to being told to change the manner in which she carried out her routine activities. Mr. Chandler wrote a note limiting her work to five hours per day.

On November 29, 2000, she underwent an evaluation by Dr. John Bursell who concluded that she should limit her work to four hours per day with a 30-pound weightlifting limit and avoidance of twisting, as well as recommending further physical therapy.

On December 28, 2000, there was a letter by Dr. Maureen Longworth basically indicating there had been a recurrence because of excessive twisting. She reemphasized the need to avoid twisting in excess of 30 degrees. It is noted that although this limitation was repeated numerous times through the records, it is somewhat confusing in that standard references would indicate 30 degrees of rotation to be normal motion. In any event, further physical therapy was planned.

Beginning in March of 2001, Dr. Bursell presented a plan for progressive increase in activities.

It should be commented on in reviewing these records that the objective basis for these repeated indications of restriction of activity do not seem present in the available medical records. It appears that these limitations were based entirely on the patient's report of subjective discomfort, which has not been objectified within the records made available for review.

These records were reviewed by Kenneth D. Sawyer, MD, orthopedic surgeon, at Medical Consultants Network, Inc., for the US Department of Labor. He apparently found the same thing, and he stated in his report of July 18, 2001, "There are no objective findings on medical examination at any time since 1995 to indicate the presence of any substantial physical pathology or need for ongoing physical restrictions in the workplace. Reference was made to multilevel degenerative disc disease on MRI scan, however, this finding is almost ubiquitous in the adult population." Dr. Sawyer went on to recommend an additional opinion for which reason Ms. Gaona presents today. We would agree, however, that the medical records give no objective support for significant impairment or need for limitation of physical activities.

Medical Consultants Network, Inc.  
February 13, 2002

File Number: 140355520  
Re: Rosa Gaona  
Page 4

---

Ms. Gaona states that there is really no further formal treatment planned. She does continue to occasionally get a physical therapy session and about once a week gets massage therapy basically whenever she feels the need. She does some exercises on her own. Nothing further is planned.

## CURRENT SYMPTOMS:

Ms. Gaona presents as a very pleasant lady today, indicating that in fact she is feeling much better than she has in the past. She still has some intermittent pain she describes as sharp and stabbing in nature, and she points to basically the area around the posterior superior iliac spine, to some extent over toward the greater trochanter on the left, and to a somewhat lesser extent and otherwise similar symptoms in the right side. She does not have any radiating pain down her legs or any numbness or weakness.

On specific questioning, she does not feel that either her walking or her sitting tolerance is limited. She states she has been assigned a 50-pound weightlifting limit and feels she can lift up to that much without difficulty.

She has had no frank loss of bowel or bladder control but does note sometimes some "leakage" after defecating.

## CHART REVIEW:

Incorporated in History of Present Injury.

## PAST MEDICAL HISTORY:

**Injuries:** Ms. Gaona's past history is noncontributory aside from the history of her spinal problems which is summarized above. She denies any other serious injuries.

**Illnesses:** She denies any serious illnesses.

**Hospitalizations:** She has not required other hospitalization or surgery.

## REVIEW OF SYSTEMS:

Ms. Gaona's review of systems is negative except as noted above.

## FAMILY HISTORY:

Ms. Gaona's family history is noncontributory.

---

Medical Consultants Network, Inc.  
February 13, 2002

File Number: 140355520  
Re: Rosa Gaona  
Page 5

## SOCIOECONOMIC HISTORY:

**Marital Status and Dependents:** Ms. Gaona is a single lady.

**Brief Work History:** Ms. Gaona continues to work full time designated as a postal clerk. She states this work keeps her on her feet virtually the whole day. She also boxes mail. She is working 40 hours a week.

**Habits:** She smokes from one-quarter to one-half pack of cigarettes per day. She may have two or three drinks a week depending on other factors.

## ORTHOPEDIC EXAMINATION:

Physical examination reveals a somewhat heavy-set lady with a height of 5 feet 4 inches and weight of 170 pounds. She uses no orthopedic equipment. She states her symptoms today are average in severity that which is quite minimal.

She walks with no specific limp and can heel and toe walk without difficulty.

She has forward flexion to 90 degrees with a nice gentle curvature throughout the thoracic and lumbar areas and no visible or palpable spasm. Side bending is to 30 degrees either way and rotation is full at 30 degrees either way. Extension is full to 30 degrees. There is no visible or palpable spasm and no sciatic notch tenderness.

Seated straight leg raising is prompt and full, unilaterally and bilaterally.

Examined supine thighs are equal at 52 cm and calves at 41 cm.

Active straight leg raising supine is negative to 90 degrees, unaffected by ankle dorsiflexion on either side. Passive hip, knee, and ankle motion is all full and symmetric.

Dorsalis pedis and posterior tibial pulses are strong.

## NEUROLOGIC EXAMINATION:

The claimant is examined to self-imposed limitations. A female chaperone is present, an employee of Medical Consultants Network, Inc.

Muscle stretch reflexes are 2+ and symmetric at knees and ankles with downgoing toes bilaterally.

Motor examination reveals normal tone and bulk of both lower extremities at 5/5 throughout all proximal and distal muscles in both lower extremities in a symmetrical fashion.

Sensation is intact in all dermatomes in both lower extremities.

Medical Consultants Network, Inc.  
February 13, 2002

File Number: 140355520  
Re: Rosa Gaona  
Page 6

Station, gait, and coordination are normal with no ataxia. She is able to walk and maintain weight on heels and toes without evidence of weakness. Tandem gait is intact with a negative Romberg.

At the conclusion of the neurologic examination, the claimant indicates that she is having pain around her hips. She points to the iliac crest regions bilaterally, more so on the left side. She asks whether or not this is a neurological problem; I told her I do not believe so. I do not find any neurological explanation for that area of pain.

## DIAGNOSIS:

Degenerative lumbar disc disease, pre-existing and unrelated to any of her industrially related conditions, but with history of aggravation of this underlying condition by several lifting and twisting types of injuries that occurred.

## DISCUSSION:

The following is in response to the questions in your cover letter.

1) *Is there a current diagnosis related to any of the work injuries listed in the Statement of Accepted Facts? If so, please provide the diagnosis and identify the objective findings that verify your opinion.*

   Diagnosis is as noted above. At the present time Ms. Gaona appears to have recovered from any and all such aggravations. She presently has no significant musculoskeletal objective findings. The only objective findings are in regard to the imaging studies and x-rays that are commented on above.

2) *Please review the attached job description and explain if Ms. Gaona is totally or partially disabled from performing full duty, providing objective findings to support your opinion.*

   The job description has been reviewed, and we believe Ms. Gaona can work on a full-time basis. Based on her underlying degenerative condition, and not based on any of her industrial injury claims, we would advise against repetitive lifting in excess of approximately 50 pounds. According to Ms. Gaona, these are the circumstances under which she is presently working full time.

3) *If partially disabled, please complete the enclosed form OWCP-5c based upon pertinent findings and please explain whether the restrictions, if any, are temporary or permanent. If temporary, please indicate an approximate date those restrictions will cease.*

Medical Consultants Network, Inc.  
February 13, 2002

File Number: 140355520  
Re: Rosa Gaona  
Page 7

---

The OWCP-5c form has been filled out with a 50-pound restriction of lifting and 75-pound restriction of pushing or pulling. These are considered to be permanent restrictions based upon her underlying degenerative condition.

We recognize in the past she had restriction of twisting in excess of 30 degrees has been made. We find this confusing as normal rotational motion of the spine is in fact 30 degrees, but she demonstrates such motion today without any evidence of limitation or discomfort.

4) *Please explain if the restrictions, if any, are due to the work injury, or to any pre-existing or non-work related conditions.*

There are no restrictions based upon Ms. Gaona's work injury. The restrictions, as stated on the OWCP-5c form, are a reflection of her underlying degenerative disc condition.

5) *If aggravation of any pre-existing condition is indicated, please explain if this is a temporary or a permanent aggravation. If temporary, when did such aggravation cease or when may it be expected to cease? If permanent, what material change has occurred to alter the course of the underlying disease? Give a detailed reasoning for your conclusions.*

Historically, Ms. Gaona's underlying degenerative condition has been aggravated on several occasions but in each case, this aggravation was temporary in nature. In retrospect, we cannot state specifically when such aggravation ceased as there are really no objective findings reported in previous examinations. We can state that there is no present evidence of any residual aggravation. We are unaware of any material change that has occurred to alter the course of her underlying disease. Her underlying condition by nature is progressive.

6) *Do you recommend any further medical treatment? If so, please indicate the type, frequency, duration and expected results.*

At the present time there is no indication of a need for further evaluation or treatment.

_____  
Scott Van Linder, MD  
Orthopaedic Surgery

_____  
Lewis B. Almaraz, MD  
Neurology

ncs:T 0202 Gaona Linder.doc  
Ross Ferrell, Quality Service Coordinator  
(206) 621-9097 ext 434