LAW OFFICE OF PATRICIA S. ROSE
157 Yesler Way, Suite 503
Seattle, Washington 98104
(206) 622-8964
206) 622-2593 fax
prose83897@aol.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROSA GAONA,<br><br>       Plaintiff,<br><br>  v.<br><br>JOHN E. POTTER, Postmaster General,<br><br>       Defendant. | Case No.  3:04-cv-00118-JKS<br><br>PLAINTIFF'S SUPPLEMENTAL<br>RESPONSE TO<br>TO DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT, MOTION TO<br>AMEND UNDER CR 15; AND<br>FOR CR 56(f) RELIEF |

### I.    SUMMARY OF ARGUMENT

Under CR 56(e), there are triable issues of fact regarding each of plaintiff's

claims that preclude summary adjudication by the Court.  Moreover, in the interests

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-1

of judicial economy, and justice under CR 15, Rosa Gaona, by and through her

attorney of record, Patricia S. Rose, seeks to substitute Exhibit A to the Rose

declaration accompanying this memorandum as the Third Amended Complaint, to

conform to evidence and to supplement the complaint originally filed by Ms. Gaona

plaintiff pro se under CR 15. Additionally, because she has been unable to obtain an

affidavit from a key witness, Ms. Gaona also seeks limited relief under CR 56(f) in

the form of a brief continuance to obtain this witness' testimony through interview or

deposition.

## II.    SUMMARY OF RELEVANT FACTS1

Rosa Seabreeze Gaona was first employed by the United States Postal Service

(hereinafter "**USPS** "or "defendant" as a Letter Carrier in March of 1986.  After

training and satisfactory completion of her probationary period, she successfully

performed her work through bid assignments on routes based at the Federal Building

station in Juneau Alaska.  She is of mixed Hispanic and Native descent and also was

active in the Juneau Branch of the National Association of Letter Carriers, the labor

organization that governed her employment.  She served as its President from

approximately 1993 to 1995. In 1992, she first filed and substantially prevailed in a

formal complaint of employment discrimination against agents of the USPS

---

1 This memorandum of law and factual recital is based on the pleadings filed to date and
accompanying this memorandum including the declarations of Plaintiff and Exhibits thereto, and
the declarations and accompanying exhibits of the following individuals:  Jennifer A. Mason ,
Susan Hall, Howard Ensnor, Ranae Davis, Stephen Staveland,, Mary E. Jordan, and Wanda
Temple, that have been filed with this memorandum.

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-2

including her employer's attempt to discharge her without justification.

In addition to her protected activity on this EEO complaint, she also actively supported the rank and file employees in forwarding grievances to management regarding working conditions including inappropriate actions by a fellow Union member and intermittent acting supervisor, Stuart Akagi, who was then Postmaster Donaghey's son-in-law.

As a result of her race, gender and ethnicity, as well as protected conduct, both coworkers and supervisors and managers of USPS were permitted to engage in adverse actions and derogatory conduct directed at Ms. Gaona with the knowledge of management including Postmaster Donaghey who did not take action to prevent the conduct from occurring. Throughout the period from 1992 to1995, the hostile working environment engendered by the hostility of Stuart Akagi and James Donaghey, among others, continued and no action was taken to enforce any corrective action.

On or about October 30 1995, Plaintiff injured herself as a result of falling on a walk way en route from a parking lot to the Federal Building. As a result of the fall, she suffered a disabling back injury that was initially diagnosed as a lumbar strain and ultimately diagnosed as myofascial pain syndrome. Because of the extent of her injury, Ms. Gaona immediately sought medical care and was instructed to take medical leave and did so until December 11, 1995 when she returned on a reduced schedule and with restrictions. She worked intermittently in limited duty and/or light

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-3

duty assignments from that date until September of 2002. As a result of various exacerbations of her original injury because of work requirements that exceeded her restrictions, she applied for and received federal workers' compensation benefits for a brief period in approximately 2000-2001.

During the period from 1995 to 2002, Ms. Gaona attempted on multiple occasions to return to work with defendant within the medical restrictions she was given by her treating physicians and was repeatedly rebuffed in her efforts to do so. On occasions when she did return, she was required to work outside of her restrictions causing further injury. At one point after returning to work, an incident occurred in September 1999 wherein Stuart Akagi threatened her job security and stated that he would see that she was terminated. Soon thereafter, she was charged with being absent without leave without justification and suspended when employees with similar attendance patterns who took unscheduled leave for personal needs such as fishing trips were not scrutinized or disciplined in this fashion.

During the period from 1997 to 2004, agents of the Postal Service repeated made derogatory remarks about Ms. Gaona to one another and in the presence of her coworkers indicating that she was a "problem" employee, a "troublemaker", "nothing but trouble" and "trying to stir things up." It was common knowledge that management was attempting to remove her from employment.

As a result of the hostility directed at her and the threat to Ms. Gaona's job security, she developed disabling depression and anxiety. Ultimately in 2002, she

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-4

was diagnosed with post-traumatic stress disorder (PTSD) after the Union President, Chris Dargan, indicated that he wanted to see her fired. In 1999, with the intervention of the State of Alaska Department of Vocational Rehabilitation, Ms. Gaona negotiated a mediated resolution that would have permitted her to return to work with reasonable accommodations for her physical and mental disabilities including use of two bundle casing system that had been provided to similarly situated employees with medical restrictions. In 2000, Postmaster Donaghey instructed Ken Cickler to stop accommodating Ms. Gaona. Mr. Cickler did so in the presence of Union President Chris Dargan who did not intervene or attempt to support Ms. Gaona's concerns about being forced to work outside of her medical restrictions.

Between 1999 and 2002, **Ms**. Gaona was not afforded opportunities to work within the Carrier craft on numerous occasions and instead was provided light duty work in the Clerk craft while Part-time Flexible Carriers were provided the opportunities to work in Ms. Gaona's career choice of letter carrier. As a result of the lack of opportunities for productive work in her craft and/or accommodations for her restrictions, she was absent for an extended period from September 10, 2002 until the spring of 2004,

Beginning in 2003, Ms. Gaona understood that her physicians were prepared to release her to return to full-time work as a Carrier albeit with restrictions to accommodate her continuing mental and physical impairments. Despite her

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-5

physicians' certification that she could generally return to work as a City Carrier as long as she was not required to report at the Juneau Federal Building location, agents of USPS made no affirmative efforts to assist in her obtaining a work assignment outside of that location or that would fit within these restrictions.

On her own initiative, Ms. Gaona unsuccessfully explored the possibility of being assigned a limited duty assignment to perform a portion of the Route 10/Douglas route.  To her dismay, she later learned that the position had been awarded by bid to a less senior employee, Chris Dargan, with no attempt to notify her that the bid was open.  During this period, she also began interactions with USPS' Reasonable Accommodation Committee and Occupational Health nurses and staff in Anchorage, Alaska to provide information that would facilitate her return to work. Throughout 2003.For example, she provided detailed medical information from her health providers including Drs Schultz, Stillner, and Ellis all of whom supported the Douglas route assignment as a reasonable accommodation and within her restrictions.

Instead of engaging in the interactive process to assist Ms. Gaona in her attempt to return her to work and which is required by law, on or about February 4, 2004, USPS agents inexplicably concluded that Ms. Gaona did not meet the criteria for reasonable accommodation as defined in the Rehabilitation Act.    USPS management officials subsequently took action on or about March 3, 2004 to remove Ms. Gaona from her career permanently by concluding that she was unable to perform her position responsibilities due to her disabilities.

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-6

Only after a grievance under her collective bargaining agreement and intervention by the regional officers of her labor organization, in cooperation with the efforts of private counsel through EEO complaints regarding the agency's failure to accommodate plaintiff's disability, was Ms. Gaona termination averted and the proposal rescinded. Ultimately, Ms. Gaona was placed in a limited duty assignment in the Clerk craft as a Custodian at defendant's Mendenhall facility effective late April of 2004.

Throughout the period from late April 2004 to her separation date in 2005, various USPS agents continued to scrutinize Ms. Gaona's behavior in a manner unlike that of her coworkers. For example, she was scrutinized for her willingness to work a limited tour without a lunch break while similarly situated employees on eight hour tours worked through their lunches without such scrutiny. Despite the unwelcome conduct and scrutiny of her work performance by management, Ms. Gaona was able to successfully perform the essential functions of her modified duty assignment as a Maintenance Custodian and had positive work relationships with her immediate supervisors.

On or about May 10, 2005, Ms. Gaona learned that she would be supervised at Mendenhall by Dailang Seceda, one of the supervisors who had been assigned to the Juneau Federal Building and who had been part of the hostile work environment that she experienced there. Because she understood that her physicians recommended that she have no supervision or oversight by those individuals, Ms.

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-7

Gaona perceived the action to be a continued attempt to undermine her successful

return to work and raised concerns about this assignment with her local management.

As a result, she filed an additional EEO complaint with USPS agents. When that

problem was not remedied and the complaint was not investigated in a timely basis,

she felt no other choice but to resign her employment rather than face the same form

of hostility and subsequent mental heath consequences that she had experienced in

the past.

Since she filed this lawsuit pro se in  2004, USPS has been on notice that Ms.

Gaona has viewed her judicial complaint as embracing all of the issue, and now those

leading up to her separation. Those events are summarized and reflected in the

proposed Amended Complaint attached as Exhibit A to the Rose declaration.

While attempting to exhaust the administrative process, she was told that the

complaint here included those issues and she thus chose not to file additional judicial

filings and/or civil actions to preserve those claims.

After discovery cut-off, Ms. Gaona located one of her early identified

witnesses, James Kammermeyer, the former Labor Relations Representative of USPS

in Juneau. She believes that he would offer honest testimony corroborative of the

agency's discriminatory treatment of her and retaliatory intent towards her.

## III.    ISSUES PRESENTED

1.     Under Fed. R. Civ. Pro. 56(e), whether defendant has met its burden
of establishing the absence of material factual disputes such that it is entitled to
judgment as a matter of law when:

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-8

### III.    ISSUES PRESENTED-continued

       a.    Defendant has produced little probative evidence in an admissible format; and

       b.    Plaintiff has produced evidence raising genuine issues of credibility and/or material fact as to each of plaintiff's causes of action;

2.    Under Fed. R. Civ. Pro. 15 (a), 15(b), 15 (c)(1) and 15(d), and LR 15.1, whether in the interest of justice and/or in order conform to evidence and supplement the record, plaintiff is entitled to amend her complaint and/or substitute Exhibit A to the declaration of counsel, and/or defendant estopped from asserting that plaintiff failed to exhaust administrative remedies?

3.    Under CR 56(f), whether plaintiff has established that she has been unable to secure relevant sworn testimony from a key witness, James Kammermeyer, former Labor Relations Representative, for defendant, and thus warranting a brief continuance to secure such testimony and/or to address issues in the Amended Complaint?

### IV.    ARGUMENT AND AUTHORITY

**A.    THROUGH THE DECLARATIONS ACCOMMPANYING THIS MEMOARNDUM, PLAINTIFF HAS ESTABLISHED TRIABLE ISSUES OF FACT AS TO EACH OF HER CLAIMS FOR DISABILITY DISCRIMINATON, GENDERDISCRIMINATION AND REATALIATION IN VIOLATION OF FEDERAL LAW.**

    **1.    Summary Judgment is Generally Inappropriate in Employment Discrimination Matters**

        **A.    Summary Judgment Standard.**

As the Court is well aware, summary judgment is appropriate only if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-9

and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assn.,* 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Significantly, for this case, the moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leisek v. Brightwood Corp.,* 278 F3d 895, 898 (9th Cir. 2002). Here, it is telling that defendant provides no meaningful declaration or testimony except old testimony from remote administrative claims and otherwise limits the factual support for its brief to a few excerpts from Ms. Gaona's deposition or past hearing testimony.

The nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Far Out Productions, Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir. 2001). As in any summary judgment motion, this Court should be mindful of the general rules of construction in evaluating summary judgment motions, i.e. that (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-10

### B.    Employment Discrimination Summary Judgment.

The Ninth Circuit has repeatedly stressed that summary judgment is generally inappropriate in employment disputes where central issues turn on credibility, good faith, motives and other issues traditionally reserved to the jury as fact finder. *See e.g . . . . Chaung v. University of California*, 225 F.3d 1125, 1129 (9th Cir. 2000).  That Court stated:

> It is not the province of a court to spin . . . evidence in an employer's favor when evaluating its motion for summary judgment. To the contrary, all inferences must be drawn in favor of the non-moving party.

*Id.*  Here, there is direct evidence of demeaning and derogatory comments made by key decision-makers about plaintiff and particularly her protected activity, gender and medical condition. These statements raise significant inferences as the legitimacy of any motivations for its actions. See declarations of Howard Ensor, ¶¶ 3-6, and Mary Jordan, ¶¶5-7.  Similarly there is evidence of disparate treatment of plaintiff as compared with such co-workers as Ranae Davis, Stephen Staveland, and Wanda Temple, among others as to defendant's practice as to accommodation and treatment of injured workers. *See* declarations of Davis, Staveland and Temple. Favored treatment of individuals who did not complain of discrimination or who were not in a plaintiff's protected class is highly probative of intent. *See e.g. Chaung, supra*, 225 F.3d at 1124 1125. *See also Metzler v. Federal Home Loan Bank of Topeka*, --- F3d – , 2006 WL 27333112 at *9, (10th Cir. 2006).

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-11

Moreover, the evidence raised by the Jennifer Mason, Ranae Davis and Howard Ensor declarations as to the paucity of women City Carriers and Ms. Mason's treatment during relevant timeframes suggest the general sexist atmosphere as to perceptions of the capabilities of females as Letter Carriers raises critical inferences of discriminatory intent. *See e.g. Bergene v. Salt River Project Agricultural Improvement and Power District*, 272 F.3d 1136, 1143 (9th Cir. 2000),

   2. **Plaintiff has raised genuine issues of material fact as to her disparate treatment claims under the Rehabilitation Act and/or the ADA**

      A. **Defendant Should Be Equitably Estopped from Arguing Plaintiff Is Not A Qualified Person With A Disability When Its Agents Attempted to Remove Her Because of those Conditions.**

USPS should be judicially or equitably estopped from even arguing that Ms. Gaona is not a person with a disability particularly when its agents attempted to remove her from her job ostensibly because her disabilities prevented her from doing the essential functions of her job. See ¶¶s 16-17 of Gaona Declarations and Exhibit 9 to Gaona Declaration. Minimally, such evidence raises as question of fact as whether plaintiff meets the standard for a person "regarded as disabled" under federal law.

      B. **Ms. Gaona as Established That She is A Qualified Person With A Disability**

Even in the absence of an estoppel, Ms. Gaona has established that there are genuine issues of material fact as her status as a "qualified person with a disability" under federal law. The ADA [and Rehabilitation Act] define a "qualified individual"

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-12

as an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8)" On summary judgment, the employer , USPS bears the burden of proving that Ms. Gaona cannot raise facts as to whether she is "qualified." *Hutton v. Elf Atochem North America, Inc.*, 273 F.3d 884, 892 (9th Cir. 2001). The Court "must consider whether [Ms. Gaona] can perform the job's essential functions without reasonable accommodation, and then, if [she] cannot, whether [she] can do so with reasonable accommodation." *See Kaplan v. City of North Las Vegas,* 323 F.3d 1226, 1231 (9th Cir. 2003). *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006) As the 9th Circuit noted in the *Dark* case, "[h]ad Dark's treating physicians opined that Dark was fit to operate heavy machinery at the time of his firing, this perhaps would have given rise to a genuine issue of material fact as to his qualifications without reasonable accommodation." *See, e.g., Fredenburg v. Contra Costa County Dep't of Health Servs.,* 172 F.3d 1176, 1179 (9th Cir. 1999).

Here, there ample evidence that Rosa Gaona's treating providers felt she was able to work in her position with accommodations and were attempting to get her back to work in a mentally and physically healthy setting. Yet their efforts to do so were rebuffed by the Post Office. There can be no doubt that she had a record of both physical and mental impairments that substantially limited major life activities such as her ability to work, sleep, concentrate, interact with other life activities recognized

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-13

as "major" in the ADA jurisprudence. *See e.g.* Exhibits 2, 3, and 5 to Gaona declaration. Similarly, Ms. Gaona gave adequate notice of those impairments repeatedly to agents of USPS. *Id.* It is also clear that the USPS failed to take the steps necessary to accommodate her conditions. These facts all raise genuine issues of material fact under the law.

**C.    Plaintiff Has Raised Evidence As to the Adequacy of Defendant's Alleged Reasonable Accommodations Efforts**

Likewise, in this case, given the paucity of evidence of any reasonable accommodation efforts by the Postal Service or the mandatory interactive process with Ms. Gaona regarding her attempted return to work before the USPS' aborted discharge action, summary judgment is entirely inappropriate. Under the Rehabilitation Act, it is well established that the federal government and/or the defendant here are charged with being a model employer in regards to its hiring, placement and accommodation of disabled employees. Such governmental employers are required to "make reasonable accommodation to the known physical or mental limitations of a qualified handicapped [disabled] applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program" *Fuller v. Frank,* 916 F.2d 558, 561 (9th Cir. 1990) [quoting old regulation language]. It is well established that questions as to the reasonableness of specific accommodations are questions of fact    *Id.* at 562, n.6 (Post Office employment case); *see also Lujan v. Pacific Maritime Ass'n,* 165 F.3d

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-14

738, 743 (9th Cir. 1999). *See also Reynolds v. Brock*, 815 F.2d 571, 575 (9th Cir. 1987).

USPS as the employer bears the burden of proving an inability to accommodate. *Mantolete v. Bolger*, 767 F.2d 1416, 1423 (9th Cir. 1985) Here, there is no probative evidence in the record to meet a defendant's burden of establishing its inability to provide work to a plaintiff within known restrictions. Summary judgment cannot be granted on this record.

### 3. Plaintiff Has Established Her Prima Facie Claims of Retaliatory Adverse Actions Because of Her Protected Opposition and Participation Conduct.

To establish her prima facie case of retaliation under the new standard enunciated by the recent United States Supreme Court, Ms. Gaona need only demonstrate that she engaged in protected opposition activity, and/or participated in proceedings authorized to enforce Title VII, that USPS t took actions that a reasonable employee would have found materially adverse, and that a causal connection can be inferred between the adverse actions and Ms. Gaona's conduct. *See e.g. Burlington Northern and Santa Fe Railway v. White*, 126 S.Ct. 2405 (2006). There is no dispute her that throughout her extensive career with defendant, Ms. Gaona both vocally opposed defendant's discriminatory treatment and used the enforcement machinery available to federal employees to enforce their Title VII and Rehabilitation Act claims as well. Similarly, the threatened loss of her job, along with the other tangible economic losses from letters of warnings, classification as

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-15

absent without leave, and management refusals of return to work certificates, disciplinary suspensions and other disciplinary actions, threatened and implemented, were all adverse to Ms. Gaona and would be so to any reasonable employee. Just as in the *White* case, the mere fact that she was able to remedy some of the most egregious acts such as the threatened removal, through use of her union grievance procedure and/or with the aid of private counsel, does not defeat her claim for retaliation. *Id.* The Ninth Circuit has recognized a claim for retaliatory harassment in the context of a Postal Service case as well. See e.g. *Ray v. Henderson,* 217 F.3d 1234 (9th Cir. 2000). See also *Jensen v. Potter,* 435 F.3d 444 (3rd Cir. 2005).

   **4.     Plaintiff Has Raised Genuine Issues of Fact as To Her Hostile
           Work Environment Claims Based on Race, Gender, Retaliation,
           and/or Disability As Well**

   As suggested above, Ms. Gaona has raised evidence that demonstrates that a rational jury could find that defendant's agents deliberately created a hostile work environment, whether due to her perceived or actual physical and mental disabilities, her gender, her race/ethnicity and/or her vigorous advocacy for herself and others under anti-discrimination laws. In other words, a plaintiff must prove that a rational jury could find that the workplace is infected with discriminatory intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *See e.g. Harris v. Forklift Systems,* 510 U.S.17 (1993). Claims have frequently been recognized in the context of gender-based hostility. *Id.  See also EEOC v. NEA,* 422 F.3d 840 (9th

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-16

Cir. 2005). They have also been premised on race. More recently, courts have recognized claims of disability-based harassment in violation of the ADA and/or Rehabilitation Act, *See e.g. Fox. v. General Motors,* 94 F. Supp. 2d 723 (N. Dist. W. Va. 2000)(reversed on other grounds. Finally, as indicated above, the 9th Circuit has also recognized a claim for hostile work environment based on protected activity. *Ray v. Henderson, supra.*

Whether a particular work environment is objectively and/or subjectively hostile should be measured by "looking at all the circumstances", including "the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance." *Clark County v. Braden*, 532 U.S. 268 (20001), other citations omitted. Unlike *Braden*, this case presents not a case of an isolated act of inappropriate banter, random unkindness or rudeness but one demonstrating a conscious <u>and successful effort</u> by speaking agents of the defendant to undermine Rosa Gaona's self –esteem and cause her serious emotional distress. *See* Exhibit 5 to Gaona declaration.

It must be up to a jury of Rosa Gaona's peers to determine whether any responses taken by USPS were adequate or not to deter her co-workers and/or whether the USPS should be held liable under agency principles for the actions of its own management. *See e.g. Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries v. Ellerth*, 524 U.?S. 742 (1998). *See also Little v. Windermere,* 265 F.3d 903, amended at 301 F.3d 958 (9th Cir. 2001 and 2002)

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-17

*Fiedler v. United Airlines*, 218 F.3d 973 (9th Cir. 2000) [hostile work environment on gender /summary judgment reversed]. For all of these reasons, as the courts ruled in the cases cited, this matter cannot be readily dismissed on summary judgment .

**B.      UNDER CR 15, PLAINTIFF'S COMPLAINT MUST BE AMENDED IN THE INTERSTS OF JUSTICE TO ADDRESS THE TOTALITY OF CONCERNS AS TO DEFENDANT'S CONDUCT**

Exhibit A to the declaration of counsel accompanying this brief is a true and accurate copy of Plaintiff's proposed Third Amended Complaint for Damages and drafted consistent with the record produced here. Leave to amend to permit this filing should be "liberally granted" when justice demands. Fed. R. Civ. Pro. 15. Here, that filing should be permitted as ironically the defendant has continually represented that certain issues were being litigated in this case Again, its agents should be estopped from asserting any alleged technical failure of plaintiff to wholly exhaust administrative remedies on each of her major complaints relating to the ongoing failure to accommodate and hostile work environment engendered by that failure. *See* Gaona Declaration, ¶15 and Exhibit 7.

It is also well-established in federal civil procedure that amending a complaint can be, and often is, appropriate prior to entry of a pre-trial order that essential replaces the parties' initial pleadings. Here, the parties contemplated such a process for this amendment as far back as September of 2005 when plaintiff's deposition was taken. See Exhibit B. to Rose Declaration.

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-18

Counsel has been given the opportunity to stipulate to the filing of Exhibit A to the Rose declaration but has declined to so. *See* Exhibit C to Rose declaration. Plaintiff still has no objection to a limited reopening of discovery as discussed below

¶    C.    **UNDER CR 56(f), PLAINTIFF SEEKS LEAVE TO INTERVIEW JAMES KAMMERMEYER, A MATEIRAL WITNESS IDENTIFIED BY BOTH PARTIES,AND SUPPLEMENT THE RECORD IF NECESSARY**

After repeated efforts, this witness was located after the discovery cut-off. He is a former speaking agent of the defendant who was employed as its Labor Relations Representative. Although he is not employed by the USPS, he is a federal employee and is reluctant to voluntarily cooperate with plaintiff's counsel although he may not be prohibited from doing so. As a result, he has indicated that he will not consent to an informal interview in part apparently based on feedback from counsel for defendant to await clarification and/or an order from this Court.2

Plaintiff seeks leave under Fed. R. Civ. Pro. 56(f) to interview him and possibly supplement this record. He was the defendant's speaking agent during the hearing and administrative process below. Defense counsel mistakenly believes that Ms. Gaona only seeks to elicit testimony regarding that process and/or derived from attorney-client communications with agency counsel during that period. Rather, plaintiff and her counsel believe that the witness may have knowledge that would

---

2 Plaintiff's counsel has transcribed the voicemail messages from Mr. Kammermeyer if the Court believes it relevant but believes that she has characterized his position accurately. She would have objection to any in camera interview by the Court of the witness in the absence of both counsel if necessary to determine whether he has probative evidence.

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-19

bolster and corroborate the testimony of Mary Jordan, Susan Hall and others as to

the central disputed issue here, i.e. the true motive and bias and prejudice of USPS

(his *former* employer) against Ms. Gaona simply because of who she is and her

vigorous advocacy for herself and others.

It is within this Court's discretion to grant this motion when the proposed

discovery is probative of a genuine issue of material fact such as the defendant's

motives here. See e.g. *Burlington Northern & Santa Fe Ry. Co. v. The Assiniboine*,

323 F.3d 767, 773-775 (9th Cir. 2003) As that Court stated, "the denial of a Rule

56(f) application is generally disfavored where the party opposing summary judgment

makes (a) a timely application which (b) specifically identifies (c) relevant

information, (d) where there is some basis for believing that the information sought

actually exists. " *Id.* at 775, other citations omitted. Here, plaintiff is not seeking a

burdensome deposition but an opportunity to interview the witness and prepare a

declaration. If counsel for defendant wishes to participate, or if a deposition is

requested for the witness' sense of security, there would be no objection. Similarly,

plaintiff has no objection to a limited discovery period for defendant to address any

remaining issues if her requested relief under Fed. R. Civ. Pro 15 is granted.

### V.   CONCLUSION

Defendant has not and cannot meets its legal burden of establishing the lack

of genuine issues of material fact regarding each of plaintiff's claims. As a result,

their failure precludes summary adjudication and dismissal by the Court. Similarly,

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-20

Ms. Gaona has established why, in the interests of judicial economy, and justice under CR 15, she seeks to substitute Exhibit A to the Rose declaration accompanying this memorandum into the record, as the Third Amended Complaint,. It conforms to evidence and supplement the pleading originally filed by plaintiff pro se.

Finally, Plaintiff has established that to date, she has been unable to obtain an affidavit from a key witness, and thus is entitled to limited relief under CR 56(f) in the form of a brief continuance to obtain this witness' testimony through interview or deposition. Additionally, she would not object to a continuance of her deposition in light of the amended complaint.

Respectfully submitted this 13th day of November 2006.

LAW OFFICE OF PATRICIA S.ROSE

s/ Patricia S. Rose_____

PATRICIA S. ROSE, WSBA #19046
Attorney for Plaintiff
157 Yesler Way, Suite 503
Seattle, Washington 98104
(206) 622-8964
206) 622-2593 fax
email: prose83897@aol.com

I declare under penalty of perjury that this amended and supplemental memorandum was filed electronically with a copy served simultaneously on the Office of the U.S. Attorney via: (x ) email and a complete set of all the pleadings referenced in this response and filed on November 10th 2006 by (x) priority mail to the Court and to the Office of the U.S. Attorney

s/ Patricia S. Rose_____

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
OF DISMISSAL-21